1

**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 700
2375 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
(602) 445-8000

John R. Clemency (SBN 009646)
Todd A. Burgess (SBN 19013)

Attorneys for *New Hope Partners, L.L.C.*
and *Mortgages Ltd.,* as Servicing Agent
for *New Hope Partners, L.L.C.*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Case No. 2-06-bk-02386-CGC |
| Covenant Christian Center International, Inc. | |
| Debtor. | |
| Covenant Christian Center International, Inc., | Adversary No. 2-07-ap-00055-CGC |
| Plaintiff, | **MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6) AND FED.R.BANKR.P. 7012(b)** |
| v. | |
| Mortgages, Ltd.; Mortgages Ltd. Securities, L.L.C.; and New Hope Partners, L.L.C., | |
| Defendants. | |

1   Defendants Mortgages, Ltd. ("MLtd."), Mortgages Ltd. Securities, L.L.C. (MLtd.

2   Sec."), and New Hope Partners, L.L.C. ("New Hope") hereby move to dismiss the *First*

3   *Amended Complaint* (the "Complaint") filed by Covenant Christian Center International,

4   Inc. ("CCCI" or "Debtor") with prejudice pursuant to Fed.R.Civ.P. 12(b)(6), made

5   applicable to this proceeding pursuant to Fed.R.Bankr.P. 7012(b), because the Complaint

6   fails to state a claim upon which relief may be granted.  If and to the extent necessary, the

7   Court may and should consider matters outside of the pleadings (including those matters

8   outside of the pleadings referenced in the Complaint), and treat this Motion as a request

9   for summary judgment as provided in Fed.R.Civ.P. 12(b)(6), made applicable to this

10  proceeding pursuant to Fed.R.Bankr.P. 7012(b).

11      This Motion is supported by: (i) the accompanying *Memorandum of Points and*

12  *Authorities*; (ii) the *Appendix of Exhibits In Support Of Motion To Dismiss* (the

13  "Appendix") filed concurrently herewith; (iii) the *Under Advisement Decision Re: New*

14  *Hope's Motion to Lift Stay* entered by the Court on March 1, 2007 (the "Stay Relief

15  Decision"); (iv) the sworn testimony of witnesses that have provided testimony already in

16  …

17  …

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1    this case, including the testimony of Eva Yang, Sam Tang, Malcolm Jozoff, and James

2    Cordello who were examined at length by the Debtor pursuant to Bankruptcy Rule 2004

3    in an unsuccessful attempt to garner support for the Complaint; and (v) all other germane

4    matters of record in the above-captioned Chapter 11 case.[1]

5         RESPECTFULLY SUBMITTED this 20th day of March, 2007.

6         GREENBERG TRAURIG, LLP

7

8         By:    *Todd Burgess*

9                John R. Clemency
                 Todd A. Burgess

---

[1]      In support of the Motion, Defendants have cited to various portions of the already extensive
evidentiary record in the Chapter 11 case, including the transcripts of various Fed.R.Bankr.P. 2004
examinations, deposition transcripts, trial exhibits, and transcripts from the stay relief trial on December
21, 2006, January 12, 2007, and January 16, 2007. References to the stay relief trial transcripts will be by
date, page and line (e.g., 12/6/06 TR at 1:22). References to 2004 examination and deposition transcripts
will be by witness name, date, page and line (e.g., Lee 12/6/06 TR at 1:22). References to exhibits from
the stay relief trial offered by the Debtor will be cited as "Debtor Ex. "__" at p.____," and references to
exhibits offered by New Hope will be cited as Movant Ex. "___". Reference to the Chapter 11
administrative docket will be by docket number (e.g., "Dkt. No. "__"). The Defendants also will provide
the Court with parallel citations indicating the location of cited record items in the supporting Appendix
(e.g., App. Ex. "___") to the extent such items are included in the Appendix.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    FACTUAL AND PROCEDURAL BACKGROUND.

### Background on the Parties

1.    The Debtor is a religious community run by Pastor Stacy Lee and his wife, Michelle Adair Lee (the "Lees"). [Stay Relief Decision 1:13]. Based largely on the value of their personal residence and their ownership interest in several McDonalds franchises through Mitch Corporation ("Mitch"), the Lees boasted an annual income of $429,000 and a net worth of $8,200,000 on a financial statement dated July 11, 2005 that was delivered to Louis Cunningham, a creditor in the case. [App. Ex. M (Movant Ex. 50)].

2.    According to its web site, a fundamental part of CCCI's vision is to empower the members of its congregation "to get wealth." Stacy Lee readily acknowledges that he has been influenced significantly by Creflo Dollar, the TV evangelist whose world wide following provides millions of dollars in annual support. [App. Ex. A (Movant Ex. 1)].

3.    Prior to his involvement with CCCI, Stacy Lee worked in the legal department of General Motors Corporation ("GM"), and he performed audits on commercial loans made by General Motors Acceptance Corporation, the finance arm of GM. [Dkt. No. 180 (Deposition Designations]. Michelle Lee is an "accomplished business woman and CEO" who has "a powerful anointing for finances." [App. Ex. A (Movant Ex. 1)].

4.    Mortgages Ltd. ("MLtd.") is mortgage banking company licensed by the State of Arizona that has been making real estate loans since 1963.

5.    Mortgages Ltd. Securities ("MLtd. Sec.") is a licensed broker dealer that provides investment services and advice for qualified investors.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

6.     The operations of MLtd. and MLtd. Sec. are completely separate.  MLtd. Sec. has no involvement whatsoever in the origination, administration, or collection of loans provided by MLtd. to its third party borrowing customers.

7.     New Hope Partners, LLC ("New Hope") is an Arizona limited liability company that is owned by Malcolm and Jane Jozoff (the "Jozoffs").  Up until his retirement several years ago, Malcolm Jozoff served as the President of the Dial Corporation.  New Hope and the Jozoffs are investors with MLtd. Sec.

**Typical MLtd. Loan Transactions**

8.     Investors with MLtd. Sec. typically invest in real estate loan pools that are managed by MLtd. Sec. or in direct deed of trust loans made by MLtd. to third party borrowers.  In a fairly typical loan transaction,[2] MLtd. will originate a real estate loan to a third party borrower.  Shortly after the closing of the Loan, and in accordance with loan documents and disclosures provided to the borrower, MLtd. will create fractional interests in the loan, and will sell the fractional interest to various MLtd. Sec. investors.  MLtd. then acts as servicing agent for the holders of the fractional interests, and MLtd. retains the right to repurchase the fractional interests in the loan in the event of a default by the borrower.  [Stay Relief Decision 2:5-9].

9.     Typically, MLtd. resells defaulted loans under its "Performance Plus" program to a single MLtd. Sec. investor, who acquires the loan by paying all sums due on the loan to the holders of the fractional interests, and by paying a "Performance Plus" fee that typically is 1.5% of the principal balance of the loan.  MLtd. acts as the servicing agent for the purchaser of the defaulted loan.  In the typical "Performance Plus" transaction where a 27% default rate accrues under the defaulted loan, the agency

---

[2]     MLtd. provides a variety of loan products to its real estate borrowing customers.  Thus, the description of the "typical transaction" is included to provide some context for the loan that was made by MLtd. to CCCI (and to show how there was and is nothing unusual about the origination and administration of the CCCI loan by MLtd.).

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1    agreement between MLtd. and the buyer of the defaulted loan provides that the buyer will

2    receive the first 18% of interest collected, and MLtd. will receive as compensation for

3    acting as the servicing agent, the balance of the default rate interest collected on the loan.

4    MLtd. also receives as part of its compensation for acting as servicing agent any

5    additional fees and expenses that are collected from the borrower under the terms of the

6    underlying loan documents.  [Stay Relief Decision 2:9-23].

7        10.    MLtd. Sec. is not a party to any contract with CCCI.

8                    **The CCCI Loan Application Process**

9        11.    On or about March 2, 2005, Stacy Lee executed a *Loan Application* on

10   behalf of CCCI requesting a loan in the amount of $1,075,000 from MLtd.  By his

11   signature, Stacy Lee also acknowledged, on behalf of CCCI, receiving and reviewing a

12   *Disclosure Statement*, *Fee Schedule*, and *Mortgage Servicing Transfer Disclosure* related

13   to the requested loan.  [App. Ex. C (Movant Ex. 4)].

14       12.    The *Loan Application* plainly revealed (among other things) that the loan

15   sought by CCCI from M Ltd.: (i) would bear non-default rate interest of 11.5% and

16   default rate interest of 27%; (ii) would give rise to a 35% late fee on delinquent

17   installments; (iii) would give rise to a post maturity late charge that would accrue each

18   month at the rate of 3% of the outstanding principal balance of the loan; and (iv) would be

19   freely assignable by MLtd.  [App. Ex. C (Movant Ex. 4)].

20       13.    The *Disclosure Statement*, the *Fee Schedule*, and the *Loan Quote-*

21   *Competitive Opportunity Pricing* (each of which was signed by Stacy Lee) also plainly

22   revealed the interest rate, late charges, post maturity charges, and other expenses

23   (including the Performance Plus) fee that accrued under the CCCI loan.  [App. Ex. C

24   (Movant Ex. 4)].

25

26

### The Closing of the CCCI Loan from MLtd.

14.    On or about March 2, 2005, MLtd. closed and funded the $1,075,000 loan to CCCI (the "Loan").[3]  Among other things, the Loan is evidenced by a *Promissory Note* dated March 2, 2005 signed by Stacy Lee on behalf of CCCI.  [App. Ex. D (Movant Ex. 5 at pp. CCCI 1129-1132)].

15.    The Term of the Loan was 12 months and was to be used by the Debtor to acquire the 83rd Avenue Property.  [App. Ex. C (Movant Ex. 4); App. Ex. D (Movant Ex. 5) at p. CCCI 1129].

16.    The *Promissory Note* provides, among other things, that "…Holder may assign its rights under this Note without prior notice to Maker" and that "Maker acknowledges that Mortgages, Ltd. is Holder's Servicing Agent".  [App. Ex. D (Movant Ex. 5) at p. CCCI 1132].

### Security for the Loan

17.    On March 3, 2005, Stacy Lee, on behalf of CCCI, executed a *Deed of Trust, Assignment of Rents and Security Agreement* (the "Deed of Trust") in favor of MLtd. with respect to the property commonly referred to as the 83rd Avenue Property (as more fully described in Exhibits A and B to the Deed of Trust) as security for the payment and performance of all of CCCI's obligations under the "Loan Documents," as that term is defined in the Deed of Trust.  The Deed of Trust properly was recorded in the Official Records of the Maricopa County Recorder on March 9, 2005 as Record No. 20050288359.  [App. Ex. D (Movant Ex. 5) at pp. CCCI 1133-1146].

18.    On March 3, 2005, Stacy Lee, on behalf of CCCI, executed an *Assignment of Rents, Leases, and Profits*.  [App. Ex. D (Movant Ex. 5) at pp. CCCI 1147-1150].

---

[3]  CCCI paid approximately $44,000 of closing costs out of the Loan proceeds.

19.     MLtd. filed a UCC-1 Financing Statement relating to the *Promissory Note* and Deed of Trust in the Office of the Secretary of State of Arizona on March 21, 2005 as Record No. 200513539769; and, MLtd. recorded a UCC-1 Financing Statement in the Official Records of the Maricopa County Recorder on March 9, 2005 as Record No. 20050288363.  [App. Ex. D (Movant Ex. 5) at pp. CCCI 1151-1162].

20.     The Lees and Mitch also secured repayment of the Loan through personal guarantees executed by Stacy Lee, Michelle Adair Lee, and Mitch Corp. (the Lees' closely held corporation).  [*See* Dkt. No. 33 (CCCI Bankruptcy Statements and Schedules, Schedule H)].

### Fractionalization of the CCCI Loan

21.     As it does with many of its loans, MLtd. assigned portions of the CCCI Loan (and its rights under the Loan Documents) to various MLtd. Sec. investors. Although MLtd. assigned 100% of the Loan (and its rights under the Loan Documents) to the investors, MLtd. continued as the Servicing Agent for the Loan acting on behalf of the assignees.  [App. Ex. D (Movant Ex. 5) at pp. CCCI 1163-1186].

### CCCI's Failure to Pay the Loan at Maturity

22.     The Loan matured and became due and payable on March 4, 2006 (the "Maturity Date").  [App. Ex. D (Movant Ex. 5) at p. CCCI 1129].

23.     CCCI failed to pay the Loan in full on the Maturity Date, which was a default under the Loan Documents.  From and after the Maturity Date, after CCCI failed to timely repay the Loan, MLtd., as Servicing Agent, was entitled to exercise all rights and remedies under the Loan Documents.  [App. Ex. D (Movant Ex. 5) at pp.  CCCI 1129-1146].

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

24. CCCI failed to timely payoff the Loan on the Maturity Date because a third party lender failed to provide the refinancing requested by CCCI to payoff the Loan. [App. Ex. I (Movant Ex. 25); Dkt. No. 180 (Deposition Designations)].

### Sale of the Loan to New Hope Partners

25. Pursuant to a *Loan Sale Agreement* effective as of March 9, 2006, MLtd., and the assignees that previously purchased portions of the Loan sold the Loan to New Hope in exchange for valuable consideration. [App. Ex. D (Movant Ex. 5)]. New Hope paid $1,160,090.11 for the Loan, which consisted of all past due principal, interest, and post-maturity charges then owing under the Loan; delinquent real estate taxes owing against the 83rd Avenue Property; the disclosed Performance Plus fee of $16,250; and other expenses then owing on the Loan (including $3,000 in attorneys' fees). [App. Ex. D (Movant Ex. 5) at pp. CCCI 1188-89; Dkt. No. 180 (Deposition Designations)].

26. Pursuant to an *Agency Agreement* effective as of March 9, 2006, MLtd. agreed to continue to service the Loan as the agent of New Hope. [App. Ex. D (Movant Ex. 5) at pp. CCCI 1190-1204].

27. Neither the *Loan Sale Agreement* nor the *Agency Agreement* altered any of the rights or obligations of CCCI under the Loan Documents. [App. Ex. D (Movant Ex. 5)].

### Pre-petition Collection Efforts and Forbearance

28. On March 9, 2006, MLtd., as Servicing Agent, executed a *Statement of Breach or Non-Performance and Election to Sell Under Deed of Trust* in accordance with its rights under the Note and the Deed of Trust. (App. Ex. E (Movant Ex. 6) at pp. CCCI 1227, CCCI 1129-1146].

29. On March 27, 2006, counsel for MLtd., as Servicing Agent, caused a *Notice of Trustee's Sale* to be recorded with respect to the 83rd Avenue Property in accordance

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1   with its rights under the Note and Deed of Trust. The trustee's sale was scheduled to

2   occur on June 27, 2006. [App. Ex. D (Movant Ex. 5) at pp. CCCI 1129-1146; App. Ex. E

3   (Movant Ex. 6) at pp. 1228-1231].

4       30.   After Stacy Lee wrote to MLtd., on behalf of CCCI, requesting a 72 hour

5   extension of the pending trustee's sale, pursuant to a *Trustee's Sale Extension Agreement*

6   dated June 23, 2006, MLtd., as Servicing Agent, agreed to continue the trustee's sale until

7   June 29, 2006. Pursuant to the June 23, 2006 *Trustee's Sale Extension Agreement*, CCCI

8   acknowledged that the Loan was in default and agreed with the then outstanding Loan

9   balance calculated by MLtd. [App. Ex. H (Movant Ex. 9); App. Ex. F (Movant Ex. 7)].

10      31.   After CCCI again failed to obtain the refinancing necessary to payoff the

11  Loan, pursuant to a *Trustee's Sale Extension Agreement* dated June 30, 2006, MLtd., as

12  Servicing Agent, again agreed to continue the trustee's sale this time until July 31, 2006.

13  Pursuant to the June 30, 2006 *Trustee's Sale Extension Agreement*, CCCI acknowledged

14  that the Loan was in default and agreed with the then outstanding Loan balance calculated

15  by MLtd. [App. Ex. G (Movant Ex. 8); Dkt. No. 180 (Deposition Designations)].

**Unsuccessful Pre-petition Refinancing Efforts by CCCI**

16

17      32.   Louis Farrell, a member of the CCCI congregation with considerable

18  mortgage brokerage experience, tried unsuccessfully to locate refinancing for CCCI from

19  April - July 2006. Mr. Farrell, who contacted 25-30 potential lending sources, testified

20  that no lender would touch a loan on the 83rd Avenue Property unless the loan to value

21  ratio was in the 60-75% range. Mr. Farrell's own company, Jabez International was

22  unwilling to consider a loan of more than $1.3 million secured by the 83rd Avenue

23  Property. [Dkt. No. 180 (Deposition Designations)].

**The CCCI Bankruptcy Filing**

24

25      33.   On August 3, 2006, minutes before the twice extended trustee's sale was

26

1 scheduled to occur, CCCI filed a voluntary petition for relief under Chapter 11

2 commencing the above-captioned case. [Dkt. No. 1].[4]

3 **Multiple Admissions of the Validity and Amount of the Loan**

4      34.    CCCI did not dispute the outstanding principal balance of the Loan in its

5 sworn bankruptcy Schedules. [Dkt. No. 33].

6      35.    As mentioned above, CCCI, through Stacy Lee, acknowledged that over

7 $1,400,000 was owing on the CCCI Loan as of June 2006. [App. Exs. F and G (Movant

8 Exs. 7 and 8)]. On behalf of CCCI, Stacy Lee acknowledged the validity and amount of a

9 number of charges then owing, but now disputed (like the Performance Plus fee and the

10 post maturity fee). [App. Ex. H (Movant Ex. 9); Dkt. No. 180 (Deposition Designations)].

11      36.    Louis Farrell was not aware of any dispute by CCCI with respect to the debt

12 owing on the Loan. Similarly, Lloyd Easters was given by Stacy Lee the figure of

13 $1,464,000 as the amount of the debt owing on the Loan as of August 1, 2006. [App. Ex.

14 J (Movant Ex. 31); Dkt. No. 180 (Deposition Designations)]. The $1,464,000

15 acknowledgment of the debt by Stacy Lee as of August 1, 2006 is almost exactly the same

16 amount ($1,464,712.65) stated as of August 3, 2006 in the proof of claim filed by New

17 Hope in this case. [App. Ex. L (Movant Ex. 35); Dkt. No. 180 (Deposition

18 Designations)].

19 **II.**   **LEGAL STANDARD.**

20      In considering a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., all

21 allegations of material fact are taken as true and construed in the light most favorable to

22 the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir.

23 1996). However, "the court [is not] required to accept as true allegations that are merely

24

25   [4]  In conjunction with the bankruptcy filing, CCCI had to regain title to the 83rd Avenue Property which had been

26   transferred to Jabez International (Louis Farrell's company) shortly after the Loan went into default. [Movant Ex. 10.]

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1   conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v.*

2   *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Further, the dismissal of the

3   complaint is appropriate if it appears beyond doubt that the claimant can prove no set of

4   facts in support of the claim, which would entitle him to relief. *ARC Ecology v. U.S.*

5   *Dept. of Air Force*, 411 F.3d 1092, 1096 (9th Cir. 2005).

6       Moreover, Rule 12(b)(6), Fed. R. Civ. P., provides that a motion to dismiss must be

7   treated as a motion for summary judgment when "matters outside the pleadings are

8   presented to and not excluded by the court." However, if the court does not rely on the

9   extraneous matters, the motion to dismiss will not be converted into a motion for

10  summary judgment. *See North Star Intern. v. Arizona Corp. Commission*, 720 F.2d 578,

11  581-582 (9th Cir. 1983).

12      To the extent the Court relies on matters outside of the pleadings and treats this

13  Motion as a motion for summary judgment, Defendants are entitled to entry of summary

14  judgment "...if the pleadings, depositions, interrogatories, and admissions on file, together

15  with the affidavits, if any, show that there is no genuine issue as to any material fact and

16  that the moving party is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56;

17  Fed. R. Bankr. P. 7056. "Summary judgment procedure is properly regarded not as a

18  disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a

19  whole, which are designed 'to secure the just, speedy and inexpensive determination of

20  every action.'" *See Celotex Corporation v. Catrett*, 477 U.S. 317, 328, 106 S.Ct. 2548,

21  2556 (1986) (citation omitted).

22      As the moving party, the Defendants bear the initial burden of informing the Court

23  of the basis for their motion and identifying the portions of the record which they believe

24  demonstrate the absence of a genuine issue of material fact. Id. The nonmoving party

25  then must come forward with "specific facts showing that there is a genuine issue for

26

1  trial." *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

2  586, 106 S.Ct. 1348, 1356 (1986) (citation omitted). The issue of fact must be genuine.

3  The nonmoving party must do more than "simply show that there is some metaphysical

4  doubt as to the material facts." *Id.* (citations omitted).

5  **III.   ARGUMENT.**

6       Defendants are entitled to dismissal of the Complaint with prejudice because, as a

7  matter of law, the Complaint fails to state a claim upon which relief may be granted.

8       **A.   The Implied Duty Of Good Faith And Fair Dealing Cannot Be Used To**

9             **Prohibit A Party From Exercising Its Express Contractual Rights.**

10       Pursuant to the First Claim for Relief of the Complaint, CCCI alleges that MLtd.

11  breached the implied duty of good faith and fair dealing: (i) by selling the Loan while

12  continuing to receive compensation as the Servicing Agent without disclosing the terms of

13  the *Agency Agreement* between New Hope and MLtd.; and (ii) by strictly enforcing the

14  terms of the Loan Documents after the default by CCCI (including attempts to collect

15  default rate interest, post-maturity charges, and other fees and charges recoverable under

16  the Loan Documents). MLtd. is entitled to the dismissal of the First Claim for Relief with

17  prejudice because, as a matter of law, the implied duty of good faith and fair dealing

18  cannot be used to contradict the express terms of the contract and prevent a party from

19  exercising its express contractual rights. *See Villegas v. Transamerica Financial Services,*

20  *Inc.*, 147 Ariz. 100, 103, 708 P.2d 781, 784 (Ct. App. 1985).

21       Arizona law implies a covenant of good faith and fair dealing in every contract.

22  *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395*

23  *Pension Trust Fund*, 201 Ariz. 474, 490, 38 P.3d 12, 28 (2002) (En Banc). "The implied

24  covenant of good faith and fair dealing prohibits a party from doing anything to prevent

25  other parties to the contract from receiving the benefits and entitlements of the

26

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1   agreement." *Id.* However, the implied covenant of good faith and fair dealing does not

2   prevent a party from exercising its express contractual rights. *Villegas*, 147 Ariz. at 103,

3   708 P.2d at 784.

4       *Villegas*, *supra*, specifically addressed the question of whether a party that retains

5   express power or discretion under a contract can exercise that power or discretion in such

6   a way as to breach the implied duty of good faith. *Villegas* held that the exercise of

7   express contractual powers does not violate the implied covenant of good faith and fair

8   dealing:

9           Plaintiffs' final argument is that Transamerica's conduct
        violated a duty of fair dealing. Essentially this contention is

10          that Transamerica, by insisting on its contractual rights under
        the first loan, forced the plaintiffs into a contract which their

11          counsel believes was disadvantageous. Courts have no right
        to remake contracts to comport with some unspecified notion

12          of fairness nor to refuse enforcement on that ground. That
        parties have been held to a duty of good faith compliance with

13          contract terms does not create a duty to offer particular terms
        or to forego available contract remedies.

14

15  *Id.*

16      The *Villegas* decision is consistent with the Arizona Supreme Court's general

17  statements regarding the application of the implied duty of good faith and fair dealing.

18  *Wells Fargo*, 201 Ariz. at 492, 38 P.3d at 30 ("If contracting parties cannot profitably use

19  their contractual powers  without fear that a jury will second -guess them under a vague

20  standard of good faith, the law will impair the predictability that ordinary commerce

21  requires") (citation omitted).

22      Courts in other jurisdictions have reached the same result. *See Carma Developers,*

23  *Inc. v. Marathon Dev. California, Inc.*, 826 P.2d 710, 728, (Cal. 1992) ("We are aware of

24  no reported case in which a court has held the covenant of good faith may be read to

25  prohibit a party from doing that which is expressly permitted by an agreement. On the

26

contrary, as a general matter, implied terms never should be read to vary express terms…"); *Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cellular Sys. Co.,* 708 A.2d 989, 992-93 (Del. 1998) (A court generally may not impose additional obligations not found in the language of a contract based on the implied covenant of good faith and fair dealing); *Paul v. Howard Univ.,* 754 A.2d 297, 310-11 (D.C. 2000) (same); *Price v. Wells Fargo Bank,* 213 Cal.App.3d 465, 261 Cal.Rptr. 735, 742 (1989) (covenant does not impose an affirmative duty of moderation in the enforcement of legal rights); *Creeger Brick and Bldg. Supply v. Mid-State Bank and Trust Co.,* 385 Pa.Super. 30, 560 A.2d 151, 154 (1989) (duty of good faith does not require a lender to surrender rights under statute or terms of the contract); *Brighton Dev. Corp. v. Barnett Bank,* 513 So.2d 1103, 1104 (Fla.App. 1987) (no bad faith in refusing to refund loan commitment and to extend time to complete loan documents).

As discussed above, MLtd. at all times acted in accordance with its express contractual rights under the Loan Documents. Accordingly, MLtd. is entitled to judgment as a matter of law on the First Claim for Relief of the Complaint.

**B.** **The Second And Third Claims For Relief Fail To State A Claim Against MLtd. Upon Which Relief May Be Granted Under A.R.S. § 33-404 And 11 U.S.C. § 544.**

The Second and Third Claims for Relief of the Complaint are frivolous. Pursuant to the Second Claim for Relief, CCCI alleges that MLtd. violated A.R.S. § 33-404 by selling the Loan to New Hope and allegedly retaining an undisclosed "beneficial interest" in the Loan. CCCI further contends that this alleged conduct by MLtd. voids all interests of MLtd. in the Loan. Pursuant to the Third Claim for Relief, CCCI seeks to avoid and recover MLtd.'s alleged "beneficial interest" in the Loan for the benefit of the CCCI bankruptcy estate pursuant to 11 U.S.C. §§ 544, 550, and 551.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1    Defendants are entitled to the dismissal of the Second and Third Claims for Relief

2 of the Complaint with prejudice because, as a matter of law: A.R.S. § 33-404 does not

3 apply under the facts of this case; MLtd. did not retain any undisclosed "beneficial

4 interest" in the Loan; on its face, A.R.S. § 33-404 does not impair, or in any way

5 adversely affect, any interest in real property acquired for value; and, even if the statute

6 applied (and it does not), the conveyance only is voidable (if at all) by the "other party to

7 the conveyance". In this case, the conveyance CCCI seeks to challenge is the sale of the

8 Loan from MLtd. to New Hope. Neither one of those parties has any interest in

9 challenging the conveyance.

10    A.R.S. § 33-404(A) and (B) provide that:

11        A.    …every deed or conveyance of real property, or an
           interest in real property…in which the grantee is described as
12        a trustee or acts as a trustee shall disclose the names and
           addresses of the beneficiaries for whom the grantee holds title
13        and shall identify the trust or other agreement under which the
           grantee is acting…
14
                              * * *
15
          B.    …every deed or conveyance of real property, or an
16        interest in real property…by a grantor who holds title to the
           property as a trustee, whether or not such capacity is identified
17        on the document through which title was acquired, shall also
           disclose the names and addresses of the beneficiaries for
18        whom the grantor held title to the property and shall identify
           the trust or other agreement under which the grantor is
19        acting…

20    As an initial matter, based on its plain language, A.R.S. § 33-404 does not apply to

21 MLtd.'s sale of the Loan to New Hope. Neither New Hope, as the grantee, nor MLtd., as

22 the grantor, held the interest in real property as a trustee or in any way acted as a trustee.

23 [App. Ex. 2 (Movant Ex. 5)]. Moreover, MLtd. did not retain any interest in the Loan

24 sold to New Nope. MLtd. assigned 100% of the Loan. *Id.* As clearly set forth in the

25

26

*Loan Sale Agreement* and the *Agency Agreement*, MLtd. is the Servicing Agent for New Hope and is paid compensation for serving in that role. *Id.*

In all events, even if the Court were to find that A.R.S. § 33-404 applies to the conveyance at issue, Defendants still are entitled to judgment as a matter of law because under A.R.S. § 33-404, only the "other party to the conveyance" may seek to void the conveyance. CCCI was not a party to the conveyance. A.R.S. § 33-404(E) provides as follows:

> E.  Any conveyance of real property or an interest in real property which does not include the disclosures required by this section with respect to the property so conveyed is voidable by the other party to the conveyance. Any action to void the conveyance shall be commenced within two years after the date of recordation of the document effecting the conveyance.

Finally, and in addition to all of the foregoing, Defendants are entitled to judgment as a matter of law on the Second and Third Claims for Relief of the Complaint because A.R.S. § 33-404(F) is clear that real property or any interest in real property or any mortgage, deed of trust, or other lien on real property that is acquired for value is "not impaired or in any way adversely affected" because of a failure to comply with the requirements of the section:

> F.  If real property or any interest in real property, or any mortgage, deed of trust or other lien on real property, is acquired for value, the title, interest, mortgage, deed of trust or other lien is not impaired or in any way adversely affected by reason of the failure of any person to comply with the requirements of this section.

It is undisputed that the conveyance of the Loan from MLtd. to New Hope was "for value". Therefore, and for all of the other reasons discussed above, the Second and Third Claims for Relief of the Complaint should be dismissed with prejudice because, as a matter of law, they fail to state a claim upon which relief may be granted.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

**C.** **The Fourth Claim For Relief Fails To State A Claim Upon Which Relief May Be Granted Under A.R.S. § 6-947(D).**

Pursuant to the Fourth Claim for Relief, CCCI alleges that MLtd. violated A.R.S. § 6-947(D) by allegedly failing to set forth in a clear and concise manner the fees and charges recoverable under the Loan. Based on alleged violations of § 6-947(D), CCCI asks the Court to deny MLtd. any compensation as Servicing Agent for the Loan, award damages in favor of CCCI, and enter "…an order directing payment and turnover to the Bankruptcy Estate of any and all funds and other value under the Covenant Church Loan, including interest thereon." [Complaint at p. 17].

MLtd. is entitled to judgment as a matter of law on the Fourth Claim for Relief. As an initial matter, A.R.S. § 6-947(D), which regulates deceptive advertising practices by mortgage bankers, does not apply under the facts of this case. A.R.S. § 6-947(D) provides as follows:

> D. A person engaged in the mortgage banking business shall not knowingly advertise, display, distribute, broadcast or televise, or cause or permit to be advertised, displayed, distributed, broadcast or televised, in any manner whatever, any false, misleading or deceptive statement or representation with regard to the rates, terms or conditions for a mortgage banking loan or mortgage loan. The charges or rates of charge, if stated, shall be set forth in a clear and concise manner.

In this case, CCCI has not alleged that MLtd. engaged in deceptive advertising practices, therefore, A.R.S. § 6-947(D) does not apply. However, even if the Court were to determine that the section does apply, MLtd. is entitled to judgment as a matter of law. Pursuant to the Loan Documents executed by Stacy Lee on behalf of CCCI at the time the Loan was made, including the *Loan Application, Disclosure Statement, Fee Schedule,* and *Promissory Note*, every fee and charge now due and owing under the Loan was clearly and concisely disclosed to CCCI. [App. Ex. C (Movant Ex. 4); App. Ex. D (Movant Ex. 5); Dkt. No. 180 (Deposition Designations)].

In addition, to the extent that CCCI alleges that an alleged violation of A.R.S. § 6-947(D) somehow voids or invalidates the Loan or New Hope's claim in the bankruptcy case, A.R.S. § 6-948 makes clear that any noncompliance does not affect the validity or enforceability of the debt:

> 6-948. <u>Noncompliance not to affect validity of loan</u>
>
> A failure to comply with the provisions of this article does not affect the validity or enforceability of any debt or any mortgage, deed of trust or lien interest on real estate. A person acquiring a mortgage banking loan or mortgage loan or any interest in a mortgage banking loan or mortgage loan as mortgagee or beneficiary or as an assignee, holder or transferee or as a pledgee or the holder of a security interest is not required to ascertain whether this article has been complied with.

Based on all of the foregoing, MLtd. is entitled to judgment as a matter of law on the Fourth Claim for Relief.

### D. MLtd. Has Not Asserted Any Claim Against CCCI, Therefore The Fifth Claim For Relief Should Be Dismissed With Prejudice.

Pursuant to the Fifth Claim for Relief of the Complaint, CCCI seeks an order of the Court disallowing any claim by MLtd. against CCCI. As discussed above, the record in this case is clear that MLtd. is not asserting any claim against CCCI. New Hope is the owner of the Loan and properly has asserted a claim against CCCI. MLtd.'s only role in this proceeding is as the Servicing Agent of New Hope. MLtd. has not asserted, and does not intend to assert, any claim against CCCI (except for a claim for its reasonable attorneys' fees and costs incurred in responding to CCCI's frivolous complaint). Therefore, the Fifth Claim for Relief of the Complaint fails to state a claim upon which relief may be granted and should be dismissed with prejudice.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

**E.** **All Interest, Fees, And Other Charges Due And Owing Under The Loan Are Reasonable And Properly Recoverable By New Hope.**

Pursuant to the Sixth Claim for Relief of the Complaint, CCCI alleges that the New Hope claim includes certain "unenforceable loan charges, fees, expenses, and/or interest" which should be disallowed pursuant to 11 U.S.C. § 502(a), but CCCI alleges no legal or equitable basis for the Court to disallow any charges, fees, expenses, and/or interest due and owing under the Loan Documents. It is undisputed that all charges, fees, expenses, and interest due and owing under the Loan were disclosed to CCCI at the time the Loan was made. It is undisputed that CCCI agreed to all such charges, fees, expenses, and interest. And, after default, through the extension agreements requested and agreed to by CCCI, CCCI again specifically acknowledged and agreed to pay all outstanding principal, charges, fees, expenses, and interest due and owing under the Loan.

Moreover, under section 506(b), a secured creditor is allowed interest (without regard to default or non-default rate) on its claim, and "any reasonable fees, costs, or charges provided under the agreement..." Here, New Hope seeks only interest along with reasonable charges provided under the Loan Documents (and agreed to on numerous occasions by CCCI). Based on the evidence at the stay relief trial, New Hope was fully secured as of the filing of the bankruptcy case, and therefore is entitled to recover the full amount of its claim pursuant to section 506(b). CCCI's unsupported allegation that charges under the Loan should be disallowed fails to state a claim upon which relief may be granted. Therefore the Sixth Claim for Relief should be dismissed with prejudice.[5]

---

[5]    To the extent that CCCI claims that any default rate interest sought by New Hope should be disallowed, it is worth noting that the default rate interest being charged by Louis Cunningham, the junior lien-holder on the 83rd Avenue Property, is less than the default rate interest being charged by New Hope. And, the Debtor has raised no objection to the Cunningham claim. [*See* Dkt. No. 33 (CCCI Bankruptcy Statements and Schedules, Schedule D)].

**F.** **There Is No Basis For The Court To Order The Equitable Subordination Of New Hope's Claim Against The Debtor.**

Pursuant to the Seventh Claim for Relief of the Complaint, CCCI seeks a judgment subordinating New Hope's claim and lien pursuant to 11 U.S.C. § 510(c)(1) and transferring New Hope's lien to the bankruptcy estate pursuant to 11 U.S.C. §§ 510(c)(2) and 551. CCCI alleges that subordination of the New Hope Claim is warranted because New Hope: (i) purchased the Loan from MLtd.; (ii) refused to extend the maturity date of the Loan; (iii) strictly enforced the provisions of the Loan Documents; and (iv) allegedly refused to disclose certain documents related to the sale of the Loan from MLtd. to New Hope. New Hope is entitled to immediate dismissal of the Seventh Claim for Relief with prejudice as a matter of law. It is well settled that a lender's mere enforcement of its contractual rights and remedies against a borrower provides absolutely no basis for the equitable subordination of the lender's claim.

11 U.S.C. § 510(c) provides that the Court may:

> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

> (2) order that any lien securing such a subordinated claim be transferred to the estate.

*See* 11 U.S.C. § 510(c).

"The question whether a creditor's conduct is so unconscionable as to require equitable subordination as a remedy is a conclusion of law, reviewable de novo." *Smith v. Associates Comm. Corp.* (*In re Clark Pipe & Supply Co., Inc.*), 893 F.2d 693, 700, n. 5 (5th Cir. 1990) (En banc). The subordination of a claim based on equitable considerations generally requires three findings:

> (1) that the claimant engaged in some type of inequitable conduct, (2) that the misconduct injured creditors or conferred

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

unfair advantage on the claimant, and (3) that subordination would not be inconsistent with the Bankruptcy Code.

*In re First Alliance Mort. Co.*, 471 F.3d 977, 1006 (9th Cir. 2006). In addition, where "non-insider" and "non-fiduciary" claims are involved, "the level of pleading and proof is elevated: gross and egregious conduct will be required before a court will equitably subordinate a claim." *Id.* "Although equitable subordination can apply to an ordinary creditor, the circumstances are 'few and far between.'" *Id.* citing *ABF Capital Mgmt. v. Kiddler Peabody & Co., Inc. (In re Granite Partners, L.P.)*, 210 B.R. 508, 515 (Bankr. S.D.N.Y. 1997) (collecting cases).

In this case, the inequitable conduct alleged by CCCI consists of New Hope purchasing the Loan from MLtd., enforcing its contractual rights and remedies under the Loan Documents, and allegedly failing to disclose the terms of certain agreements executed by New Hope and MLtd. in connection with New Hope's purchase of the Loan. As a matter of law, the conduct alleged by New Hope is wholly insufficient to warrant the equitable subordination of New Hope's claim against CCCI. In fact, the conduct alleged by CCCI is expressly allowed under the terms of the Loan Documents. [*See, e.g.*, App. Ex. D (Movant Ex. 5) at pp. CCCI 1129- 1150]. For instance, the *Promissory Note* specifically provides that the Holder (MLtd. at the time the note was executed) "may assign its rights under this Note without prior notice to Maker"; the *Promissory Note* provides that failure to pay all sums due and owing on the maturity date is a default and specifically details the holder's rights upon default [App. Ex. D (Movant Ex. 5) at pp. CCCI 1130 - 1132]; and, the *Deed of Trust, Assignment of Rents, and Security Agreement* expressly authorizes, among other things, the sale of the 83rd Avenue Property at a trustee's sale in the event of a default. [App. Ex. D (Movant Ex. 5) at pp. CCCI 1139- 1140].

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

Under similar circumstances, Courts have held that the mere exercise of contractual rights and remedies provides no basis for an equitable subordination judgment. *Clark Pipe*, 893 F.2d at 702 (lender's reduction of available funds on a revolving line of credit was not the type of unconscionable conduct sufficient to invoke equitable subordination where lender's control over borrower's finances, "…admittedly powerful and ultimately severe, was based solely on the exercise of powers found in the loan agreement"); *United States Abatement Corp. v. Mobil Exploration and Producing U.S. (In the Matter of United States Abatement Corp.)*, 39 F.3d 556, 562 (5th Cir. 1994) ("We know of no cases (and USA cites none in its brief) in which the exercise by one party to a contract of a contractual right to withhold payment occasioned by the breach by the other contracting party of that contract has been considered the type of inequitable "control" which would justify equitable subordination"); *Waslow v. MNC Commercial Corp. (In re M. Paolella & Sons, Inc.)*, 161 B.R. 107, 120 (E.D. Pa. 1993) ("Our attention has not been called to any case wherein a court has equitable subordinated the claim of a non-insider who adhered to the terms of a loan agreement"); *Kham & Nate's Shoes No. 2, Inc. v. First bank of Whiting*, 908 F.2d 1351, 1357 ("Firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of "good faith"); *Cosoff v. Rodman (In re W.T. Grant Company)*, 699 F.2d 599, 610 (2d Cir. 1983) ("…there is generally no objection to a creditor's using his bargaining position, including his ability to refuse to make further loans needed by the debtor, to improve the status of his existing claims"); *Sloan v. Zions First national Bank (In re Castleton's, Inc.)*, 990 F.2d 551, 559 (10th Cir. 1993) (no equitable subordination where lender simply enforced its contractual rights); *Davlin v. Fidelcor Business Credit Corp. (In the Matter of Southern Standard Fittings Co., Inc.)*, 1991 WL 197018 (E.D. La.) at *4-5 (same).

1   Like the cases cited above, New Hope did nothing but enforce its rights and

2   remedies under the Loan Documents.  Therefore, New Hope is entitled to judgment as a

3   matter of law, and the Seventh Claim for Relief of the Complaint should be dismissed

4   with prejudice.[6]

5   **G.    CCCI's Payment Of An Extension Fee To MLtd. Does Not Constitute A**
    **Voidable Preferential Transfer.**
6

7       Pursuant to the Eighth Claim for Relief of the Complaint, CCCI claims that a

8   $32,000 extension fee paid to MLtd. in connection with the June 30, 2006 *Trustee's Sale*

9   *Extension Agreement* between CCCI and MLtd constitutes a voidable preference pursuant

10  to 11 U.S.C. § 547(b).  MLtd. is entitled to judgment as a matter of law on the Eighth

11  Claim for Relief.  As an initial matter, for a transfer to qualify as a preference under §

12  547(b) it must be "for or on account of an antecedent debt owed by the debtor before such

13  transfer was made" 11 U.S.C. § 547(b)(2).  In this case, the $32,000 extension fee paid by

14  CCCI to MLtd. pursuant to the *Trustee's Sale Extension Agreement* was not "for or on

15  account of an antecedent debt."  The extension fee was a new debt incurred

16  contemporaneously by CCCI upon the execution of the *Trustee's Sale Extension*

17  *Agreement*.  Accordingly, the Eight Claim for Relief fails to state a claim upon which

18  relief must be granted.

19      In addition to the foregoing, pursuant to 11 U.S.C. § 547(c)(1), a trustee may not

20  avoid a transfer:

21          (1) to the extent that such transfer was---

22              (A) intended by the debtor and the creditor to or for
            whose benefit such transfer was made to be a
23          contemporaneous exchange for new value given to the debtor;
            and
24

25  _____

    [6]    *See, also Manufacturers National Bank v. Auto Specialties Manufacturing Co. (In re Auto Specialties*
26  *Manufacturing Co.)*, 18 F.3d 358, 362 (6th Cir. 1994) (lender is entitled to recover its attorneys' fees and costs
    incurred in defense of alleged equitable subordination claim).

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

(B)    in fact a substantially contemporaneous exchange;

11 U.S.C. § 547(c)(1).

Pursuant to 11 U.S.C. § 547(a)(2), "new value" includes a lender's extension of new credit. By executing the *Trustee's Sale Extension Agreement*, MLtd. extended new credit to CCCI for an additional 32 days. Pursuant to the *Trustee's Sale Extension Agreement*, it also is clear that both CCCI and MLtd. agreed to the payment of the extension fee and intended the payment of the extension fee to be in exchange for new value given to the debtor. Accordingly, MLtd. is entitled to judgment as a matter of law on the Eighth Claim for Relief of the Complaint.

## H.    MLtd. Is Entitled To Judgment As A Matter Of Law On CCCI's Alleged "Coercion And Duress" Claim.

Pursuant to the Ninth Claim for Relief of the Complaint, CCCI seeks a judgment rescinding a *Trustee's Sale Extension Agreement* executed by CCCI and MLtd because CCCI allegedly was under duress caused by MLtd. and allegedly was coerced into executing the agreement by MLtd.[7] CCCI's alleged coercion/duress claim also fails as a matter of law and should be dismissed with prejudice. The facts that allegedly warrant rescission of the extension agreement are as follows: (1) CCCI failed to repay the Loan when it matured on March 4, 2006, which was a default under the Loan Documents; (2) on March 27, 2006, counsel for MLtd., as Servicing Agent, caused a *Notice of Trustee's Sale* to be recorded with respect to the 83rd Avenue Property setting a trustee's sale for June 27, 2006; (3) CCCI twice asked MLtd. to agree to postpone the pending trustee's sale; and (4) MLtd. twice agreed to postpone the pending trustee's sale, but only on the

---

[7]    The Complaint references an extension agreement allegedly dated June 27, 2006. The record reflects that CCCI and MLtd. executed two (2) *Trustee's Sale Extension Agreement*. The first agreement was executed on June 23, 2006. The second agreement was executed on June 30, 2006. [App. Exs. F and G (Movant Exs. 7 and 8)].

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1  terms and conditions stated in the extension agreements dated June 23, 2006 and June 30,

2  2006, respectively.  [App. Ex. F and G (Movant Exs. 7 and 8)].

3         Arizona follows the Restatement 2d of Contracts § 492, which defines the legal

4  theory of duress as follows:

> (a)    any wrongful act of one person that compels a
> manifestation of apparent assent by another to a transaction
> without his volition, or
>
> (b)    any wrongful threat of one person by words or other
> conduct that induces another to enter into a transaction under
> the influence of such fear as precludes him from exercising
> free will and judgment, if the threat was intended or should
> reasonably have been expected to operate as an inducement.

10  *Pleasants v. Home Federal Savings & Loan Ass'n.*, 116 Ariz. 319, 321, 569 P.2d 261, 263

11  (Ct.App. 1977) citing *Dunbar v. Dunbar*, 102 Ariz. 352, 429 P.2d 949 (1967).  Three

12  elements are common to all situations where duress has been found to exist:  "(1) that one

13  side involuntarily accepted the terms of another; (2) that circumstances permitted no other

14  alternative; and (3) that said circumstances were the result of coercive acts of the opposite

15  party."  *Id.* citing *Williston on Contracts*, 3rd Ed. s. 1603, p. 655.  The mere fact that one

16  party is aware of the other party's financial pressures does not constitute business

17  compulsion.  *See Frank Culver Electric, Inc. v. P.O. Jorgenson*, 136 Ariz. 76, 77, 664

18  P.2d 226, 227 (Ct.App. 1983).

> A charge of economic duress or business compulsion must be
> based on the acts or conduct of the opposite party and not
> merely on the necessities of the purported victim, or on his
> fear of what a third person might do, and the mere fact that a
> person enters into a contract with reluctance, or as a result of
> pressure of business circumstances, financial embarrassment,
> or economic necessity, does not, of itself, constitute business
> compulsion or economic duress invalidating the contract.
>
> Unless wrongful, unlawful, or unconscionable pressure is
> applied there is no business compulsion amounting to
> duress…

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1    *Id.* citing 17 C.J.S. Contracts § 177.

2          In this case, as a matter of law, CCCI cannot sustain a cause of action for duress.

3    First, no wrongful act by MLtd. created the circumstances under which CCCI now claims

4    to have been under duress, *i.e.,* the threat of losing the 83rd Avenue Property at a trustee's

5    sale. The Loan, which had a term of twelve (12) months, matured on March 4, 2006.

6    CCCI failed to pay-off the loan at maturity, which was a default under the terms of the

7    Loan Documents. CCCI failed to pay the loan off at maturity because its refinancing

8    efforts were unsuccessful, not because of any wrongful act by MLtd. Based on CCCI's

9    default, MLtd., as Servicing Agent for the Loan, noticed a trustee's sale for the 83rd

10   Avenue Property, which was one of the remedies available under the terms of the Loan

11   Documents. CCCI twice chose to request postponements of the trustee's sale. MLtd.

12   twice agreed to postpone the trustee's sale, but only on the terms and conditions stated in

13   the extension agreements. CCCI was free to either accept or reject the terms of the

14   extension agreements, and certainly had other reasonable alternatives, including the

15   following: (i) Stacy Lee and Michelle Lee, the principals of CCCI and the guarantors of

16   the Loan, could have put up the money to pay off the Loan (or at least contributed enough

17   additional funds to CCCI to improve the loan to value ratio on the 83rd Avenue Property);

18   (ii) CCCI could have filed a Chapter 11 bankruptcy case to forestall the trustee's sale; or

19   (iii) CCCI could have simply let the property be sold at the trustee's sale.

20          Under the circumstances, MLtd. is entitled to judgment as a matter of law on

21   CCCI's alleged duress claim. The lender's exercise of (or threat to exercise) valid

22   contractual remedies after a default by the borrower does not amount to duress or

23   coercion. *Ginther-Davis Center, Ltd. v. Houston National Bank*, 600 S.W.2d 856, 863

24   (Ct.App.Tex. 1980) (no duress where extension agreement was signed under valid threat

25   of foreclosure by bank); *Oleet v. Pennsylvania Exchange Bank*, 285 A.D. 411, 414

26

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1  (Sup.Ct.N.Y. 1955) (no duress where extension agreement was signed under valid threat

2  of suing to enforce terms of short term notes).

3      A cause of action for duress also does not exist when the alleged victim had

4  alternatives available other than agreeing to the terms of the proposed agreement. *Frank*

5  *Culver*, 136 Ariz. at 77-78, 664 P.2d at 227-28 (no duress where contractor under

6  financial pressure from other creditors accepted check for discounted payoff because

7  contractor had other reasonable alternatives, and defendant did not create contractor's

8  financial pressures); *Pleasants*, 116 Ariz. at 321, 569 P.2d at 263 (no duress where lender

9  insisted upon payment of 1% mortgage assumption fee and increased interest rate as

10  condition to agreeing to allow home buyer to assume existing mortgage; buyer could have

11  declined to purchase the property); *see, also Villegas*, 147 Ariz. at 103, 708 P.2d at 784

12  (granting summary judgment in favor of lender on borrower's claim that lender forced

13  borrower into a disadvantageous contract by insisting on enforcing its contractual rights

14  after default).

15      **I.      CCCI Waived Any Right To A Trial By Jury.**

16      To the extent that the Court determines that any claim for relief of the Complaint

17  survives the instant Motion, CCCI's request for a jury trial should be denied.  Through the

18  Loan Documents, CCCI waived any right to a jury trial on alleged claims related to or

19  arising from the Loan.  [*See, e.g., Loan Application* at ¶ 9(l) (App. Ex. C (Movant Ex. 4)

20  at p. CCCI 0167); *Promissory Note* at ¶ 13(e) (App. Ex. D (Movant Ex. 5) at p. CCCI

21  1132); *Deed of Trust, Assignment of Rents, and Security Agreement* at ¶ 15(i) (App. Ex. D

22  (Movant Ex. 5) at pp. CCCI 1141)].  Under Arizona law, a party may waive its right to a

23  trial by jury. *Industrial Commission v. Frohmiller*, 60 Ariz. 464, 474, 140 P.2d 219, 223

24  (1943) (Right to a jury trial is a privilege that may be waived by either party, and waiver

25  may be in the form of an express contract).  Accordingly, to the extent that the Court

26

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1   determines that any claim for relief alleged by CCCI survives this motion to dismiss,

2   CCCI's request for a trial by jury should be denied.[8]

3       **J.      There Is No Basis For Any Claim Against MLtd. Sec.**

4       The operations of MLtd. and MLtd. Sec. are completely separate. MLtd. Sec. has

5   no involvement whatsoever in the origination, administration, or collection of loans

6   provided by MLtd. to its third party borrowing customers. Moreover, MLtd. Sec. never

7   had any dealings with CCCI and never entered into any contract with CCCI. Accordingly,

8   in addition to the fact that the Complaint fails as a matter of law, there is absolutely no

9   basis for any alleged claim against MLtd. Sec. Accordingly, any and all claims for relief

10  asserted against MLtd. Sec. should be dismissed with prejudice for failure to state a claim

11  upon which relief may be granted.

12  **III.   CONCLUSION.**

13      Based on all of the foregoing, Defendants respectfully request:

14      A.      That any and all claims asserted against MLtd. Sec. be dismissed with

15  prejudice for failure to state a claim upon which relief may be granted;

16      B.      That the Complaint be dismissed with prejudice for failure to state a claim

17  upon which relief may be granted, and that the Court award Defendants their reasonable

18  attorneys' fees and costs incurred in responding to the Complaint;

19      C.      To the extent that the Court considers matters outside of the pleadings, and

20  treats this Motion as a motion for summary judgment, Defendants request the immediate

21

22

23  _____

[8]     Even if CCCI had not waived its right to a trial by jury, the majority of the claims for relief alleged in the
24  complaint either arise under the Bankruptcy Code, invoke the Court's equitable powers, or seek equitable relief, and
    therefore do not carry with them a right to a trial by jury. Accordingly, Defendants preserve their objection to
25  CCCI's request for a jury trial and reserve the right to submit additional authorities if, and to the extent that, the
    Court determines that any claim for relief asserted by CCCI survives the instant Motion. To the extent that the Court
26  determines that CCCI has a right to a jury trial on any claim for relief of the Complaint, Defendants do not
    consent to a jury trial in the Bankruptcy Court.

1    entry of summary judgment in favor of Defendants and against CCCI on all claims for

2    relief of the Complaint;

3        D.    If the Court determines that a genuine issue of material fact exists with

4    respect to any claim for relief of the Complaint, Defendants respectfully request that the

5    Court enter summary judgment on all remaining claims for relief, and enter an Order

6    setting forth the facts that appear without substantial controversy and ordering such

7    further proceedings in this matter as are just and appropriate; and

8        E.    Granting Defendants such other and further relief as the Court deems just

9    under the circumstances.

10       RESPECTFULLY SUBMITTED this 20th day of March, 2007.

11           GREENBERG TRAURIG, LLP

12

13       By:    _Todd A Burgess_

14           John R. Clemency
             Todd A. Burgess

15   COPIES of the foregoing were served
     this 20th day of March 2007, by Email
16   to the following parties:

17   Office Of The U.S. Trustee
     230 North First Avenue, Suite 204
18   Phoenix, AZ 85003
     ric.j.cuellar@usdoj.gov
19
     Donald L. Gaffney
20   Eric Pezold
     SNELL & WILMER L.L.P.
21   One Arizona Center
     400 East Van Buren
22   Phoenix, AZ 85004
     dgaffney@swlaw.com
23   Attorneys for Debtor

24

25

26

J. Scott Burns
BURNS AND BURNS PC
2828 North Central Avenue, Suite 1110
Phoenix, AZ 85004
jsburns1@aol.com
State Court Counsel for Debtor

James M. Maldonado
JENNINGS, HAUG & CUNNINGHAM
2800 North Central Avenue, Suite 1800
Phoenix, AZ 85012
jmm@jhc-law.com
Attorneys for Interstate Mechanical
Corporation

J. Henk Taylor
LEWIS & ROCA LLP
40 North Central Avenue
Phoenix, AZ 85004
Htaylor@lrlaw.com
Attorneys for Louis Cunningham Trust

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000