Donald L. Gaffney (#005717)
Eric S. Pezold (#023402)
Jasmin Yang (#024036)
Andrew A. Harnisch (#024957)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070
E-Mail: dgaffney@swlaw.com
     epezold@swlaw.com
     aharnisch@swlaw.com
Attorneys for Covenant Christian Center International, Inc.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: | In Proceedings Under Chapter 11 |
| | Case No. 2:06-bk-02386-CGC |
| COVENANT CHRISTIAN CENTER INTERNATIONAL, INC., | |
| Debtor. | |
| COVENANT CHRISTIAN CENTER INTERNATIONAL, INC., | Adversary No. 2:07-ap-00055-CGC |
| Plaintiff, | **COVENANT CHURCH'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6) AND FED.R.BANKR.P. 7012(b)** |
| v. | |
| MORTGAGES LTD., an Arizona mortgage broker; MORTGAGES LTD. SECURITIES, L.L.C., an Arizona limited liability corporation; and NEW HOPE PARTNERS, L.L.C., an Arizona Limited liability corporation, | |
| Defendants. | |

    Plaintiff (the "Church") Covenant Christian Center International, the Debtor and Debtor-in-Possession in the underlying Chapter 11 bankruptcy case, hereby responds to and requests

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Snell & Wilmer

L.L.P.

LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1  denial of the "<u>Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Bankr.P. 7012(b)</u>"

2  (the "Motion to Dismiss") filed by the Defendants Mortgages, Ltd. ("Mortgages, Ltd."),

3  Mortgages Ltd. Securities, L.L.C. ("Mortgages Ltd. Securities"), and New Hope Partners, L.L.C.

4  ("NHPLLC") (collectively, "Defendants") to dismiss the instant Amended Complaint.  Plaintiff

5  further requests the Court decline to consider the Defendants' Motion to Dismiss as a motion for

6  summary judgment.

7      This Response is fully supported by the accompanying <u>Memorandum of Points and</u>

8  <u>Authorities</u> and all pleadings and papers of record, which are incorporated herein by this

9  reference.

10  **<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

11  **I.**

12  **<u>INTRODUCTION</u>**

13      The Court should deny Defendants' Motion to Dismiss because the Amended Complaint

14  fully complies with the pleading requirements enumerated under RULE 8, FEDERAL RULES OF

15  CIVIL PROCEDURE ("RULE 8"), as incorporated into these proceedings by RULE 7008, FEDERAL

16  RULES OF BANKRUPTCY PROCEDURE.  The Amended Complaint sets forth short and plain

17  generalized statements of the Church's claims against the Defendants from which the Defendants

18  are able to frame a responsive pleading.  Moreover, when the allegations in the Amended

19  Complaint are viewed as true and construed along with all reasonable inferences in a light most

20  favorable to the Church, it is clear that Defendants cannot seriously suggest that no basic case is

21  set forth.

22      Furthermore, the Court should deny the Defendants' request to treat the Motion to

23  Dismiss as a motion for summary judgment.[1]  To gather the required evidence to substantiate the

24  _____

25  [1]    While RULE 12(b) gives the Court discretion to treat the Motion to Dismiss as a RULE 56 motion for summary judgment when matters outside of the pleading are introduced, conversion should be exercised with great caution and attention to the plaintiff's procedural rights.

26  *Peckmann v. Thompson*, 966 F.2d 295, 297-298 (7th Cir. 1992) ("Although it is permissible

1972746

Snell & Wilmer
—— L.L.P. ——
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1   claims in the Amended Complaint, the Church anticipates that it will need to complete substantial

2   discovery, including the taking of multiple depositions of representatives from all of the

3   Defendants.  Given that the Amended Complaint was filed relatively recently, the Church has not

4   yet had an opportunity to complete -- much less initiate -- any discovery within this adversary

5   proceeding.[2]  Therefore, at this early stage of the adversary proceeding, the Motion to Dismiss is

6   premature.  In the unlikely event that the Court intends to convert the Motion to Dismiss to a

7   summary judgment motion, the Church requests, pursuant to RULE 12(b)(6) and 56(c) and (f),

8   notice of the conversion and additional time to initiate and complete discovery in order to

9   supplement the record with further factual support for its claims against the Defendants.

## II.

## BACKGROUND

On or about August 3, 2006, the Church filed a voluntary petition for relief under Chapter

11 of the Bankruptcy Code.  On or about January 26, 2007, the Church filed its "Complaint"

---

procedure to convert defense motion to dismiss for failure to state claim into plaintiff's motion for summary judgment … procedure is hazardous one that warrants special caution.").  If the Court decides that conversion is proper, the Court must take some affirmative action to effectuate conversion, it is not automatic.  *Swedberg v. Marotzke*, 339 F.3d 1139, 1143 (9th Cir. 2003) ("A Rule 12(b) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating, preferably by an explicit ruling, that it will not exclude those materials from its consideration.").  The Court must give the parties notice of the conversion and a reasonable opportunity to supplement the record through discovery.  *See Anderson v. Angelone*, 86 F.3d 932, 934-35 (9th Cir.1996) (holding that before a court may convert a motion to dismiss into a motion for summary judgment, court must provide notice of the conversion and a reasonable opportunity to present responsive evidence). *Garaux v. Pulley*, 739 F.2d 437, 439 (9th Cir.1984) (requiring stringent adherence to notice requirement upon conversion of motion to dismiss to motion for summary judgment).

[2]      The Church was able to complete very limited discovery in the bankruptcy case with respect to New Hope Partners' "Motion for Relief from Stay."  As the Court will recall, NHPLLC vehemently opposed the Church conducting any RULE 2004 examinations of representatives of NHPLLC and Mortgages Ltd. and filed numerous motions for protective orders to prohibit those examinations.  To appease NHPLLC and Mortgages Ltd., the Court imposed restrictions on the scope of the discovery available to the Church.  Consequently, the discovery obtained in the lift stay proceedings is of limited utility to the Church in this adversary proceeding, which concerns claims well beyond those raised in the lift stay proceedings.

1972746

against the Defendants. Subsequently, the Church filed its "Amended Complaint" (the "Amended Complaint") against the Defendants on February 15, 2007. On or about March 20, 2007, the Defendants filed their Motion to Dismiss. Since the Amended Complaint was filed recently, and no Defendant has yet filed an Answer, no formal discovery has yet taken place in this adversary proceeding and, in fact, the Court has not yet entered a formal scheduling order, although the discovery cutoff was just set on April 11, 2007 for August 8, 2007.

**III.**

**STANDARD FOR MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM**

The Ninth Circuit has stated that FED.R.CIV.P. 8 requires a complaint to contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Gilligan, et al. v. Jamco Development Corp. et al.*, 108 F.3d 246, 249 (9th Cir. 1997); *In re Schwartzman*, 63 B.R. 348, 356 (Bankr. S.D. Oh. 1986) (holding that the rules "require pleadings in which a movant simply, concisely and directly set forth allegations sufficient to apprise an adverse party and the court of the nature of the claim to which an adverse party responds in short and plain terms admitting or denying the allegations"). RULE 8 contemplates "neither a complicated nor convoluted pleading or discovery process." *Id.* In fact, as the Seventh Circuit noted in *Palmer, et al. v. Board of Education of Community United School District 201-U*, "[c]omplaints need not plead facts." 46 F.3d 682 (7th Cir. 1995).

Consequently, courts generally disfavor motions to dismiss for failure to state a claim. *Gilligan*, 108 F.3d at 250 ("The Rule 8 standard contains 'a powerful presumption against rejecting pleadings for failure to state a claim.'"), *see also Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir.1986) ("It is axiomatic that the 'motion for failure to state a claim is viewed with disfavor and is rarely granted.'"); *see also Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.2d 208 (9th Cir. 1957) (holding that dismissal of litigation without according parties a hearing on the merits is not favored); *In re Schwartzmann*, 63 B.R. at 355 (holding that granting

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1   a motion to dismiss is disfavored because that ruling "constitutes a judgment on the merits and is

2   accorded preclusive effect"); *In re Kelpe*, 98 B.R. 479, 480 (Bankr. W.D. Mo. 1989), *citing White*

3   *v. United States*, 588 F.2d 651 (8th Cir. 1978) (denial of motion to dismiss unless the complaint is

4   comprised of "wholly incomprehensible compilation of unrelated phrases, diatribes and

5   ramblings").

6       Courts have uniformly held that the party moving for dismissal has the burden of proving

7   "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would

8   entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); s*ee also Gelling v. Dean*, 11

9   B.R. 542, 544 (BAP 9th Cir. 1981) (holding that a RULE 12(b)(6) motion should not ordinarily be

10  granted "unless it appears to a certainty that plaintiff would be entitled to no relief under any state

11  of facts which could be proven within the framework of the allegations of the complaint").

12      When deciding a RULE 12(b)(6) motion, (1) the complaint is construed in the light most

13  favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that

14  can be drawn from the pleading are drawn in favor of the pleader.  *Gelling*, 11 B.R. at 544 ("The

15  material allegations of the complaint are taken as admitted, and the complaint is to be liberally

16  construed in favor the plaintiff.  All doubts as to the facts are resolved in favor of the pleader.");

17  *McCrary v. Barrack*, 217 B.R. 598, 604 (BAP 9th Cir. 1998) ("The reviewing court presumes all

18  factual allegations of the complaint to be true and draws all reasonable inferences in favor of the

19  non-moving party.")  *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995), *cert. denied sub nom.*,

20  *Mier v. Van Dyke*, 517 U.S. 1103 (1996).

21      The foregoing analysis makes it apparent that granting the Motion to Dismiss would be an

22  extraordinary form of relief and, therefore, the Motion to Dismiss should be denied.

23                                    **IV.**

24                                **ARGUMENT**

25      The Church asserts that the Amended Complaint sufficiently states claims that are entitled

26  to relief.  As discussed below, the Amended Complaint fully complies with the FED.R.CIV.P. 8

1972746

- 5 -

Snell & Wilmer

——— L.L.P. ———

LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1    requirement that the Amended Complaint contain "simple, concise, and direct" statements of its

2    claims against the Defendants.

3    **A.**     **Mortgages Ltd. Owed the Church a Duty of Good Faith and Fair Dealing.**

4          In its first claim for relief, the Church alleges that Mortgages Ltd.'s concealment and

5    misrepresentation of its role concerning the Covenant Loan (as defined in the Amended

6    Complaint) transactions breached the implied covenant of good faith and fair dealing.  In their

7    Motion to Dismiss, the Defendants argue that the covenant of good faith and fair dealing cannot

8    contradict the express terms of a contract and, consequently, there is no actionable breach under

9    the Loan Documents.

10         Courts considering the application of the covenant of good faith and fair dealing

11   uniformly hold that **a party may abide by the letter of a contract, but still violate the**

12   **covenant of good faith and fair dealing**.  *Wells Fargo Bank v. Arizona Laborers, et al.*, 38 P.3d

13   12, 30 (Ariz. 2002); *Rawlings v. Apodaca*, 726 P.2d 565, 573 (Ariz. 1986) ("the implied covenant

14   of good faith and fair dealing can be breached even though the company performs its express

15   covenants under the insurance contract."); *Deese v. State Farm Mut. Auto Ins. Co.*, 838 P.2d

16   1265, 1270 (Ariz. 1992); *United Dairymen of Ariz. v. Schugg*, 128 P.3d 756, 761 (Ariz. Ct. App.

17   2006) ("A party can breach the implied covenant of good faith and fair dealing by acting in ways

18   not expressly included in the contract, but which nonetheless bear adversely on the other party's

19   reasonably expected benefits of the bargain.") (*citing Bike Fashion Corp. v. Kramer*, 46 P.3d 431,

20   435 (Ariz. Ct. App. 2002)).

21         The relevant inquiry that determines whether Mortgages Ltd. breached the covenant of

22   good faith and fair dealing is not whether Mortgages Ltd. merely exercised its contractual rights,

23   but whether Mortgages Ltd. exercised its rights under the contract in a manner inconsistent with

24   the Church's understanding of the benefit of its bargain and consistent with the Church's justified

25   expectations.  *Wells Fargo*, 38 P.3d at 30; *see also Rawlings*, 726 P.2d at 573 (holding that the

26   covenant of good faith imposes an obligation refrain from "tak[ing] advantage of [] unequal

1972746

positions in order to become a second source of injury").

In the Amended Complaint, the Church alleges that as part of its scheme to run up the balance on the Church Loan and make refinancing impossible, Mortgages Ltd. engaged in a pattern of assessing charges before they were paid, charging default interest while paying the fractional interest holders only non-default interest, assessing false charges, charging interest on false charges, and charging interest on "late charge" interest. (Amended Complaint ¶¶ 57-65).

Taking those facts as true, the Court could very well find that Mortgages Ltd. exercised its discretion under the Church Loan Documents (as defined in the Amended Complaint) to an extent inconsistent with the Church's reasonably expected benefit of its bargain. Mortgages Ltd. emphasizes that it abided by the letter of its ambiguous and vaguely worded Loan Documents, an argument which is entirely without content since the Loan Document would allow Mortgages Ltd. to assert unfettered discretion to charge and expense in any fashion deemed appropriate by Mortgages Ltd. The three-party Servicing Agreement as generally described (Amended Complaint ¶¶ 18, 19) would, according to express terms, appear to have sanctioned "nonfeasance, misfeasance, or malfeasance" toward the Church, a concept utterly inapposite with the independent duty of good faith imposed by Arizona law. Since "malfeasance" has been classically described as "the commission of some act which is positively unlawful" (*Black's Law Dictionary* 1108 (4th ed.)), Defendants cannot suggest that their documents exclude a suit for breach of the duty of good faith. As such, the Motion to Dismiss should be denied with respect to Claim One.

**B.**     **Mortgages Ltd. Violated A.R.S. § 33-404 and 11 U.S.C. § 544 by the Concealment of its Interests.**

Pursuant to the second and third claims of the Amended Complaint, the Church seeks to use BANKRUPTCY CODE § 544 ("§ 544") avoidance powers to avoid Mortgages Ltd.'s unrecorded interest in the Church Loan following Mortgage Ltd.'s purported complete assignment of the Church Loan to NHPLLC.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

**1.      The Church's § 544 Powers Enable the Avoidance of the Unrecorded Interest.**

The State law basis for the Church's exercise of its § 544 strong-arm powers stems from A.R.S. §§ 33-404 and 33-412 which, when read together, provide that unrecorded conveyances of interests in real property are voidable by subsequent creditors and purchasers.  A.R.S. § 33-404 requires the parties to a real property transaction to disclose the identities of the beneficiaries of the conveyance document.  A.R.S. § 33-412(A) states: "all bargains, sales and other conveyances whatever of lands … deeds of trust and mortgages of whatever kind, shall be void as to creditors and subsequent purchasers for valuable consideration without notice, unless they are acknowledged and recorded in the office of the county recorder as required by law, or where record is not required, deposited and filed with the recorder."  Bankruptcy courts routinely recognize the invocation of the § 544 avoidance powers to avoid unrecorded interests in property. *See, e.g., In re Seaway Express Corp.*, 105 B.R. 28, 32 (9th Cir. B.A.P. 1989) ("Section 544 rewards the *diligent* creditor, the one who makes known his interest to the world.  A party with an unrecorded equitable claim against the debtor must record its claim or otherwise place the trustee and other creditors on notice, lest the latter parties rely on the debtor's ostensible ownership in extending credit.").

**2.      A.R.S. § 33-404 Applies to the Situation at Hand.**

**a.      Mortgages Ltd.[3] Had a Duty to Disclose the Beneficiaries of the Church Loan in the Sale of the Church Loan to NHPLLC.**

A.R.S. § 33-404(B) provides in relevant part that "every deed or conveyance of real property, or an interest in real property … by a grantor who holds title to the property as a trustee … shall also disclose the names and addresses of the beneficiaries for whom the grantor held title to the property and shall identify the trust or other agreement under which the grantor is acting." As set forth in the Amended Complaint, immediately following the origination of the Church

---

[3]      The Church believes that evidence will eventually show that Scott Coles also had a duty to disclose the beneficiaries of the Church Loan and Deed of Trust as he appears to be named as trustee in some of the Church Loan Documents.

Loan, Mortgage Ltd. participated or assigned the beneficial interest of the Church Loan to numerous third party investors. (Amended Complaint ¶ 15). Mortgages Ltd. then recorded those assignments in the Maricopa County Recorders' Office. (Amended Complaint ¶ 16). Those assignments expressly stated "Pursuant to Section 33-404 A.R.S., the names and addresses of the beneficiaries are available through Mortgages Ltd." Clearly, then, Mortgages Ltd. was acting as the trustee of the Church Property in the sale of the Church Loan to NHPLLC, and had a duty under A.R.S. § 33-404(B) to disclose the beneficiaries of the Church Loan.

       **b.**       **The Church, as Owner of the Church Property and Trustor Under the Deed of Trust, Was Indeed a Party to the Sale of the Church Loan to NHPLLC.**

In arguing that A.R.S. § 33-404 is inapplicable to the situation at hand, Mortgages Ltd. points to §33-404(E), which provides that the other party to the unrecorded conveyance may avoid the conveyance. That the Church is not a party to the conveyance is sophistry. Numerous parties were involved in the transfer of interests in the Church property, including the Church. Moreover, as noted in *Blalak v. Mid-Valley Transportation, Inc.*, § 33-404(E) is not necessarily the sole remedy for a failure to record, but merely an option that the other party to the conveyance can elect at its choosing. 858 P.2d 683, 688 (Ariz. Ct. App. 1993) (as evidenced in the dissent). Indeed, to view § 33-404(E) as the exclusive remedy for a failure to record nullifies the recording statute and disregards the exact situation at hand, where both parties to the conveyance (Mortgages Ltd. and NHPLLC) wish to conceal the transaction in order to deceive and manipulate third parties.

Furthermore, Mortgages Ltd. is incorrect in stating that the Church is not the requisite "other party to the conveyance" under A.R.S. § 33-404(E). This assertion is incorrect and ignores the fundamental real property principles underlying the deed of trust concept. The Church is a "party to the transaction" under A.R.S. § 33-404(E) because of the fundamental tripartite relationship arising from a deed of trust. In *Eardley v. Greenberg*, the Arizona Supreme Court considered the intertwined relationships between the trustee, trustor, and beneficiary:

Snell & Wilmer

—— L.L.P. ——
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

> The trustor, trustee, and beneficiary are inextricably interconnected links in the chain of title to real property. Each has certain rights, legal or equitable, separated from the complete bundle of real property rights. Although a trustee's range of authority is severely limited, the trustee is the holder of legal title. The beneficiary holds an enforceable lien on the property. The trustor possesses the bulk of the bundle of rights, but it is obvious that the trustor's ability to deal with those rights can be effectively eliminated by uncertainties in the chain of title concerning either the beneficiaries or the trustee.

164 Ariz. 261, 265 (Ariz. 1990).

The Church is a "party" to the transaction whose interests in the property are affected by the interaction between itself, Mortgages Ltd., and NHPLLC. This concept is further underscored by public notice and recording statutes concerning the identities of trustees and beneficiaries such as A.R.S. § 33-404(C) which requires that trustees publicly record notices of a change in beneficiary under the trust agreement. *See also* A.R.S. § 33-804 requiring the recordation of the notice of the substitution of trustee and A.R.S. § 33-818 stating "a trust deed, substitution of trustee, notice of resignation of trustee, assignment of a beneficial interest under a trust deed … if acknowledged as provided by law, shall from the time of being recorded impart notice of the content to all persons, including subsequent purchasers for value."

*Eardley* involved a trustor and a beneficiary that had split its beneficial interest in the trust property among four different investors. When the trustor defaulted on the loan, one of the investor-beneficiaries recorded the notice of substitution of trustee, ostensibly under powers of attorney executed by the other investor-beneficiaries. The trustor sought to invalidate the trustee's sale, claiming defects in the notice of substitution of trustee. The beneficiaries asserted that the trustor had no standing to challenge the sale because the dispute concerning the validity of the notice was solely an agency issue between the beneficiaries. In finding that the trustor did have standing to object to the sale, the *Eardley* court pointed to the trustor's interest in the property and the underlying goals of the real property recording statutes, "The statutory scheme is designed to insure that the identities of the beneficiaries and the authority of a trustee can be

Snell & Wilmer

——— L.L.P. ———
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1   ascertained from an examination of the record." *Id.* at 265.

2          The Church, as the Trustor and property owner, is not isolated from the trustee and

3   beneficiary (Mortgages Ltd. and NHPLLC) but has an interest in, and a statutory right to be

4   informed of, the transactions between those two parties. As in *Eardley*, the Church has standing

5   the challenge the validity of the conveyance at issue and is a "party to the transaction" for A.R.S.

6   § 33-404(E) purposes.

7          Treating all of the Church's material allegations with respect to Mortgage Ltd's beneficial

8   interest in the Church Loan as admitted, Mortgage's Ltd's failure to record its post-assignment

9   beneficial interest in the Church Loan coupled with the Church's § 544 strong-arm powers state a

10  valid claim for the avoidance of the conveyance between Mortgages Ltd. and NHPLLC.

11  Consequently, the Motion to Dismiss should be denied with respect to Claims Two and Three of

12  the Amended Complaint.

13              **c.      A.R.S. § 33-404(F) Does Not Operate to Protect the Validity of
                         Mortgages Ltd.'s Secret Interest in the Church Loan.**

14         The only reported case interpreting Section 33-404(F) notes that Section 33-404(F) is

15  intended to protect "an interest acquired by an innocent party from the grantee referred to in

16  section 33-404(A) who is acting as a trustee but who has failed to comply with the disclosure

17  provisions of that statute." *Blalak*, 858 P.2d at 689 (dissent). Thus, 33-404(F) appears to be

18  intended to protect only subsequent transferees of the subject real property. *Id.* Here, by the

19  Amended Complaint, the Church is seeking to avoid the interest of Mortgages Ltd., who is not an

20  innocent subsequent transferee of the Church Loan. Therefore, its interest is not protected by 33-

21  404(F).

22
23  **C.     Mortgages Ltd. Violated A.R.S. § 6-947 By Failing to Set Forth Its Loan Charges in
            a Clear and Concise Manner.**

24         In its fourth claim for relief, the Church alleges that Mortgages Ltd. violated A.R.S. § 6-

25  947 by failing to state its charges and rates of charge in a clear and concise manner. A.R.S. § 6-

26

1972746

Snell & Wilmer
——— L.L.P. ———
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

947(D) states that "[a] person engaged in the mortgage banking business shall not knowingly advertise, display, <u>distribute</u>, broadcast or televise … any false, <u>misleading</u> or deceptive <u>statement</u> or representation <u>with regard</u> to the rates, <u>terms or conditions for a mortgage banking loan or mortgage loan</u>.  The charges or rates of charge, if stated, shall be <u>set forth in a clear and concise manner</u>."[4]  (emphasis supplied).  In the mortgage banking context, Arizona courts have adopted an expansive definition of "deceptive" using it to refer to:

> representations that have a tendency and capacity to convey misleading impressions to consumers even though interpretations that would not be misleading also are possible.  The meaning and impression are to be taken from all that is reasonably implied, not just from what is said, and in evaluating the representations, the test if whether the least sophisticated reader would be misled.

*Madsen v. Western American Mortgage Co.*, 694 P.2d 1228, 1232 (Ariz. Ct. App. 1985) (internal citations omitted).

As set forth in the Amended Complaint, Mortgages Ltd. failed to provide either a clear or a concise statement of its rates and charges as required by the statute, but instead provided an incomprehensible and vague set of incomplete disclosures.  (Amended Complaint ¶¶ 22, 100-103).  As outlined in the Amended Complaint, the Church executed a promissory note in favor of Mortgages Ltd. which provided for a non-default interest rate of 11.5% per annum (exclusive of broker and mortgage banker fees).  (Amended Complaint ¶ 13).  The "Loan Disclosure" Mortgages Ltd. provided to the Church disclosed "<u>a</u> late payment" of 3% of the loan balance, but failed to reveal that Mortgages Ltd.'s other loan documents provided for the assessment of 36% interest for missing a monthly payment, regardless of the maturity date of the Church Loan

---

[4]     Contrary to Mortgages Ltd's assertions in its Motion to Dismiss, there is no language in A.R.S. § 6-947 that limits the prohibition of misleading and deceptive statements to large-scale advertising practices.  Indeed, to limit its application to that context is contrary to the public policy interest in encouraging clear and informative disclosures in mortgage lending.  Furthermore, "display" and "distribute" are not defined terms in the Mortgage Brokers and Mortgage Bankers Chapter of the Arizona Revised Statutes.  At least in the ordinary sense of the words "display" and "distributed," Mortgages Ltd. has displayed to and distributed to the Church misleading and deceptive representations.

1972746

- 12 -

(Amended Complaint ¶ 20). The Servicing Agent Agreement states that the Church will pay Mortgages Ltd. its current fees and costs in accordance to a Fee Schedule that could change without notice as to the amounts and items. (Amended Complaint ¶ 21). The net result of the loan transactions resulted in a 67.75% default interest rate on the loan, a rate of charge that was not stated or disclosed to the Church in a clear and concise manner. (Amended Complaint ¶¶ 11-23, 67). In accordance with *Madsen*, evaluating the totality of the disclosures reveals a set of misleading and deceptive representations. The Motion to Dismiss, therefore, should be denied with respect to Claim Four. Perhaps more importantly, nowhere would a borrower find any information regarding the opaque reference to "Performance Plus Loan" fee which, in fact, shifted the entire nature of the loan so that the borrower's mortgage banker and servicing agent would make even more money brokering the loan a second time, charge back the second brokerage to the Church as borrower, and then become a joint venturer in the remaining loan balance. It would be difficult to construct a more deceptive term in a mortgage brokerage.

Mortgages Ltd.'s reliance on A.R.S. § 6-948 ("Noncompliance not to affect validity of loan") as a basis for dismissing Claim Four is misplaced. Nowhere in Claim Four's prayer for relief does the Church request that the Court invalidate the loan as a remedy for the violation of A.R.S. § 6-947. Instead the Church is requesting in Claim Four that the Court award it damages, including payable by Mortgage Ltd.'s bond as provided by A.R.S. § 6-943.

Remedial statutes similar to A.R.S. § 6-948 do not eviscerate statutory rights to repayment or the imposition of monetary penalties. *Roberts v. State of Arizona*, 179 Ariz. 613, 618 (Ariz. Ct. App. 1994). In *Roberts*, the court interpreted A.R.S. § 6-910, a parallel provision of A.R.S. § 6-948 applicable to mortgage brokers. A.R.S. § 6-910 contains nearly identical language to § 6-948 and states "[a] failure to comply with this article does not affect the validity or enforceability of any debt, mortgage, deed of trust or any other lien interest on real estate." The Arizona Superintendent of Banks ordered a mortgage broker to repay the loan fees he earned on a transaction as a penalty for engaging in a loan transaction without a valid mortgage broker's

Snell & Wilmer

——— L.L.P.———

LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1  license (A.R.S. § 6-909(B) states that a mortgage broker is not entitled to compensation unless he

2  is licensed).  Since the mortgage broker's fees were added to the loan balance, the mortgage

3  broker argued that the payment of the penalty (the repayment of his loan fee) would violate

4  A.R.S. § 9-610.  The court found that reading A.R.S. § 9-610 in such a manner as to negate

5  statutory requirements would "emasculate" it and found that the defendant was required to return

6  his loan fees, notwithstanding the continued validity of the loan.  *Id.*  Similarly, in this situation,

7  A.R.S. § 9-648 does not operate to preclude the prohibitions of A.R.S. § 9-647 or the payment of

8  penalties from Mortgages Ltd.'s bond.  Mortgage's Ltd.'s citation of §9-648 is irrelevant and does

9  not provide any basis for dismissing Claim Four.

10  **D.  <u>Mortgages Ltd.'s Indirect and Improper Claim against the Estate Should be Disallowed</u>**

11

12       Claim Five of the Church's Amended Complaint contains a request for the disallowance

13  of any claim by Mortgages Ltd. against the Church, the Church's estate or property, and for the

14  denial of payment of any funds or other value to Mortgages Ltd. in connection with the Church

15  Loan.

16       As set forth in the Amended Complaint, NHPLLC's only interest in the Church Loan

17  amounts to principal plus eighteen percent (18%).  (Amended Complaint ¶¶ 30-47).  The balance

18  of the effective 67.75% default rate is allocated to Mortgages Ltd. pursuant to its secret kick-back

19  deal.  (Amended Complaint ¶¶ 30-54).  However, as admitted in the Defendants' Motion to

20  Dismiss, despite this secret interest held by Mortgages Ltd. in the Church Loan, Mortgages Ltd.

21  has not properly asserted a claim against the estate in compliance with 11 U.S.C. § 501.  (Motion

22  to Dismiss, p. 15, ¶¶ 15-23).  Rather, NHPLLC has attempted to include in its own claim amounts

23  allegedly owed to Mortgages Ltd. – amounts to which NHPLLC is not entitled.  NHPLLC's

24  attempt to indirectly assert a claim against the bankruptcy estate on behalf of Mortgages Ltd.

25  violates § 501 and this Court's "<u>Order Granting Motion for Order Fixing Deadline (Bar Date) For</u>

26  <u>Filing Proofs of Claim</u>."  As such, its claim should be disallowed to the extent of Mortgages

Ltd.'s interest in the Loan.

Taking the allegations in the Amended Complaint as true, the Church has properly stated a claim for the denial of Mortgages Ltd.'s indirect and improper claim against the estate under § 502(b), and for the denial of payment of any funds or other value in connection with the Church Loan to Mortgages Ltd. Accordingly, the Defendants' Motion to Dismiss should be denied with respect to Claim Five.

**E.    The Unenforceable Charges Claimed by NHPLLC Should be Disallowed.**

Claim Six of the Church's Amended Complaint contains a claim that the fees, costs, expenses, and/or interest included in the claim of NHPLLC are unenforceable and therefore should be disallowed pursuant to § 502(b), and that any lien securing such charges is void pursuant to § 506(d) and should be preserved for the benefit of the estate under § 551.

Although the Defendants' Motion to Dismiss contains conclusory proclamations that it is "undisputed" that all charges, fees, expenses, and interest claimed by NHPLLC were disclosed and agreed to by the Church, the Amended Complaint clearly pleads otherwise. As set forth in Claim Five of the Amended Comlpaint, the NHPLLC claim improperly contains amounts to which NHPLLC is not entitled, pursuant to the secret interest in the Church Loan held by Mortgages Ltd. (Amended Complaint ¶¶ 105-106). Furthermore, as part of its scheme to run up the balance on the Church Loan and make refinancing impossible, Mortgages Ltd. engaged in a pattern of assessing charges before they were paid, charging default interest while paying the fractional interest holders only non-default interest, assessing false charges, charging interest on false charges, and charging interest on "late charge" interest. (Amended Complaint ¶¶ 57-65). Needless to say, there certainly exists a "dispute' about the validity of the charges claimed by NHPLLC, despite the Defendants' declarations to the contrary.

The Amended Complaint properly sets forth facts that, if taken as true, support the disallowance of the excessive interest, fees, and charges claimed by NHPLLC and the avoidance and preservation of any claimed lien. Accordingly, the Church requests that the Defendants'

Snell & Wilmer
——— L.L.P. ———
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Motion to Dismiss be denied with respect to Claim Six.

**F.      Equitable Subordination of NHPLLC's Claim is Proper.**

Claim Seven of the Amended Complaint requests equitable subordination of NHPLLC's claim and lien under § 510(c)(1), and the transfer of its lien to the estate pursuant to §§ 510(c)(2) and 551.  The elements of a claim for equitable subordination of a claim are: (1) inequitable conduct by the claimant; (2) injury to competing claimants or an unfair advantage to the claimant to be subordinated; and (3) subordination is not inconsistent with bankruptcy law.  *Stoubmos v. Kilimnik,* 988 F.2d 949, 958 (9th Cir. 1993).  The Church has properly pled facts that support each of these elements.

**1.      The Defendants Have Engaged in Inequitable Conduct.**

The Amended Complaint properly pleads facts which indicate inequitable conduct on the part of the Defendants.  This conduct began with the origination of the Church Loan and continued well into these bankruptcy proceedings.  The loan documents themselves, prepared by Mortgages Ltd., contain unfair, incomprehensible, and unenforceable terms, including, but not limited to, the release of Mortgages Ltd. for its "nonfeasance, misfeasance, or malfeasance"; an overbroad and one-sided indemnification of Mortgages Ltd. for "*any liabilities* incurred by Servicing Agent [Mortgages Ltd.]" (emphasis added); inconsistent late charge provisions; and a vague and unintelligible schedule of fees that gives Mortgages Ltd. the power to assess any fees it wants, without notice to the Church.  (Amended Complaint ¶¶ 18-23).

The Defendants' inequitable conduct continued upon the maturity of the Church Loan, when Mortgages Ltd. declared a default and sold the loan to NHPLLC as part of its costly "Performance Plus" program, despite representations to the Church that that Mortgages Ltd. would agree to an extension of the Church Loan while it located take-out financing.  (Amended Complaint ¶¶ 25-69).  This began the astronomical accrual of unenforceable interest and fees aimed at making refinancing of the Church Loan impossible so that the Defendants could gain control of the Church Property (as defined in the Amended Complaint) for their own benefit.

Snell & Wilmer
—— L.L.P. ——
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

(Amended Complaint ¶¶ 57-69).

Later, under the threat of an impending trustee's sale, Mortgages Ltd. extracted a $32,000.00 fee for a 34-day sale extension. This fee was not applied to the outstanding balance on the Church Loan but was simply pocketed by Mortgages Ltd. without informing the beneficiary. (Amended Complaint ¶ 71).

The Defendants' inequitable conduct did not stop upon the commencement of the Church's bankruptcy case. As part of their effort to conceal the details of the sale of the Church Loan and the unrecorded interest of Mortgages Ltd., the Defendants' former counsel failed to disclose the documents evidencing the secret kick-back deal between Mortgages Ltd. and NHPLLC, despite the clear duties imposed by BANKRUPTCY RULE 2019. (Amended Complaint ¶¶ 74-80). Instead, former counsel disclosed only a "Master Agency Agreement," which appears to have no connection whatsoever to the Church Loan. (Amended Complaint ¶ 76). It was only after the Church's formal objection to former counsel's RULE 2019 statement that the true agency documents were disclosed. (Amended Complaint ¶¶ 76-79). Within two weeks of such disclosure, the Defendants' former counsel was apparently fired from representation of Mortgages Ltd. and NHPLLC in these proceedings. (Amended Complaint ¶ 79).

Indeed, Mortgages Ltd.'s conduct in this regard appears to be a repeated pattern of concealment and a failure to disclose documents and facts to the United States Bankruptcy Court.

**2. The Defendants' Inequitable Conduct Has Unfairly Advantaged the Defendants and Harmed Creditors of the Estate.**

The Defendants' inequitable conduct, including the manifestly unfair terms of the Church Loan, the failure to extend the maturity of the Church Loan, and the Defendants' efforts to collect false, inflated, and unenforceable charges resulted in the Church's inability to locate the refinancing that could have prevented the Church's bankruptcy. The $32,000.00 extension fee, which was not applied to the Church's debt but merely pocketed by Mortgages Ltd., depleted the Church's estate to the detriment of the estate's creditors. And all of these actions, together with

the Defendants' post-petition attempts to conceal Mortgages Ltd.'s interest in the Church Loan, have resulted in NHPLLC's inflated and unsupportable claim against the Church's estate, which represents a windfall for the Defendants at the expense of all other creditors.

      3.      **Equitable Subordination is Consistent with the Provisions of the Bankruptcy Code.**

Under the circumstances alleged in the Amended Complaint, equitable subordination of NHPLLC's claim is consistent with the provisions of the BANKRUPTCY CODE and the goal of equitable treatment of all creditors' claims. In the Motion to Dismiss, the Defendants attempt to characterize their inequitable actions as merely the enforcement of their contractual rights and remedies under the Church Loan. The Defendants' argument misses the point. As discussed above, the issue is not whether the Defendants simply exercised contractual rights, but whether that exercise denied the Church the benefit of its bargain and caused injury to the Church and its creditors.

Taking the allegations in the Amended Complaint as true, there are ample facts that support the equitable subordination of the NHPLLC claim. Accordingly, the Church requests that the Court deny the Defendants' Motion to Dismiss with respect to Claim Seven.

**G.**      **The Church's $32,000 Payment to Mortgages Ltd. Constitutes a Recoverable Preferential Transfer Under 11 U.S.C. §§ 547(b), 550 and 551.**

Claim Eight of the Amended Complaint alleges that the Church made a $32,000 payment to Mortgages Ltd. on or about June 27, 2006, and that such payment was a preferential transfer under § 547(b) of the BANKRUPTCY CODE. In particular, at the time that the $32,000 payment was made, the Church was the borrower under the defaulted $1,075,000 Note, and Mortgages Ltd. was a beneficiary of the Note. (Amended Complaint ¶¶ 11, 45,115). The payment was included in the payoff balance of the unpaid balance of the Note. (Amended Complaint ¶¶ 70-73). Mortgages Ltd. was the beneficiary of the payment. (Amended Complaint ¶¶ 45, 70-73). The Church was presumptively insolvent at the time of the payment, as the payment was made

within 90 days of the Petition Date. (Amended Complaint ¶ 119). Assuming the truthfulness of the facts above, the Court could find that the $32,000 payment was indeed a preferential transfer under § 547(b), notwithstanding Mortgages Ltd.'s conclusory statements to the contrary.

Moreover, Mortgages Ltd.'s argument that Claim Eight should be dismissed because the payment is not recoverable under § 550 as it constituted an "extension of new credit" lacks any factual or legal support. Even if one could posit the suggestion, Mortgages Ltd. would have the burden of proof on such an affirmative defense. In exchange for the payment, Mortgages Ltd. did not extend "new" money to the Church or agree to refinance the Note, as the Church had requested. Far from it, Mortgages Ltd. simply assessed "new" late fees and default interest on the old debt.

Clearly, Claim Eight sets forth a "short and plain statement of the claim showing that the pleader is entitled to relief." In fact, the Claim Eight contains very specific allegations, which must be taken as true, that sufficiently apprise the Court and the Defendants of the nature of the Church's Eighth Claim against Mortgages Ltd. Thus, the Defendants' Motion to Dismiss should be denied with respect to Claim Eight.

**H.** **The Church is Entitled to Rescind the Extension Agreement and Recover the $32,000 Under the Theory of Coercion and Duress.**

Claim Nine of the Church's Amended Complaint contains a claim for coercion and duress against Mortgages, Ltd. In Arizona, to assert a claim for duress, the following three elements must be proven: "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party. *Inter-Tel, Inc. v. Bank of America*, 985 P.2d 596 (Ariz. Ct. App. 1999) (*quoting Urban Plumbing & Heating Co. v. U.S.*, 408 F.2d 282, 289 (1969)). Moreover, "the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of the coercion." *Id.* (*citing Wiliston on Contracts* § 1617, at 708 (3d ed. 1970)).

Snell & Wilmer
———— L.L.P. ————
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

The Amended Complaint alleges that the Church paid Mortgages Ltd. the $32,000 on or about June 27, 2006 to forestall the foreclosure of the Church Property. (Amended Complaint ¶¶ 71). The Church further alleges that the payment was made necessary by Mortgages Ltd.'s and NHPLLC's wrongful acts, including but not limited to, the undisclosed, excessive, deceptive, and illegal fees, charges, and interest accruing on the Note, their promises to refinance and/or extend the maturity of the Note (as defined in the Amended Complaint), and subsequent inexplicable refusal to do so. (Amended Complaint ¶¶ 11-80, 124-128). Assuming those allegations are true, which the Court must do in ruling on the Motion to Dismiss, the Court could very well find that the Church is entitled to the relief sought in Count Nine of the Amended Complaint.

For these reasons, the Church respectfully requests that the Court deny the Motion to Dismiss with respect to Count Nine.

## I.     The Church Is Entitled to a Jury Trial.

The issue of the Church's right to a jury trial is not ripe; Plaintiff has properly preserved its rights.[5] Nevertheless, Art. II, § 23 of the Arizona Constitution provides that the "right of trial by jury shall remain inviolate." Consequently, to protect the sanctity of that right, Arizona courts have repeatedly held that the "[w]aiver of a right to a jury must be "knowing, voluntary, and intelligent." *Benitez v. Dunevant*, 979 P.2d 1017, 1021 (Ariz. Ct. App. 1999); *State v. Conroy*, 814 P.2d 330, 332 (Ariz. 1991); *Broemmer v. Abortion Services of Phoenix, Ltd.*, 840 P.2d 1013, 1017 (Ariz. 1992) (holding a waiver unenforceable where agreement exceeded reasonable expectations, party was unable to negotiate terms, terms were not explained and waiver was not conspicuous).

Mortgages Ltd. alleges that the Church waived its right to trial by jury by virtue of language to that effect contained in some of the Covenant Church Loan documents. The mere insertion of the waiver in the Covenant Church Loan documents does not address the issue of

---

[5]     Both the Complaint and the Amended Complaint expressly contain a demand for a jury trial and, therefore, meets the requirements of FED.R.CIV.P. 38(b) to preserve the Church's right to a jury trial on the Amended Complaint.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Snell & Wilmer

L.L.P.

LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1   whether the purported waiver was "knowing, voluntary and intelligent." Mortgages Ltd. has not

2   alleged, must less proved at this early stage of the case, that that waiver was "knowing, voluntary

3   and intelligent." Consequently, the Church respectfully requests that Mortgages Ltd.'s Motion to

4   Dismiss be denied with respect to its request that the Church's jury trial demand be stricken

5   which is entirely outside of the issues at a RULE 12(b) stage prior to the filing of Answers.

6   **J.**     **The Church Loan Documents Themselves Reveal that Mortgages Ltd. Securities.**
          **Was Directly Involved with Mortgages Ltd.'s Sale of the Church Loan to NHPLLC.**
7

8            Claim Seven of the Amended Complaint alleges, among other things, that Mortgages Ltd.

9   Securities participated in Mortgages Ltd.'s and NHPLLC's scheme to assess and collect

10  unenforceable fees, expenses, charges, and interest against the Church in an attempt to wrongfully

11  and unjustifiably deprive the Church of its property. (Amended Complaint ¶¶ 112-113). The

12  Church further alleged that the Defendants' inequitable conduct, including the actions of

13  Mortgages Ltd. Securities, resulted in damages to the Church and warrants the subordination of

14  NHPLLC's claim and lien pursuant to Section 510(c)(1) of the BANKRUPTCY CODE and the

15  transfer of that claim and interest to the Church's bankruptcy estate pursuant to Sections

16  510(c)(2) and 551. (Amended Complaint ¶¶ 112-113). Paragraphs 30-36 of the Amended

17  Complaint describe that certain "Direction to Purchase," pursuant to which NHPLLC expressly

18  instructed and authorized Mortgages Ltd. Securities to purchase the Church Loan from Mortgages

19  Ltd. (Amended Complaint ¶¶ 30-36). Clearly, then, Mortgages Ltd. Securities was directly

20  involved in the dealings between Mortgages Ltd. and NHPLLC vis-à-vis the Church Loan.

21          When the Church's allegations with respect to Mortgages Ltd. Securities are taken as true

22  for the purposes of deciding the Motion to Dismiss, it is abundantly clear that the Church has

23  articulated a viable claim against Mortgages Ltd. Securities. Consequently, the Church

24  respectfully requests that the Court deny the Motion to Dismiss to the extent that it requests the

25  claims against Mortgages Ltd. Securities be dismissed.

26

1972746

**V.**

**CONCLUSION**

WHEREFORE, for the foregoing reasons, the Church respectfully requests that the Court deny the Defendants' Motion to Dismiss in its entirety, including the Defendants request to treat the Motion to Dismiss as a motion for summary judgment. In the event that the Court converts the Motion to Dismiss to a motion for summary judgment, the Church requests that the Court notify the Church of the conversion and grant the Church an opportunity to complete discovery on the issues raised in the Amended Complaint pursuant to FED.R.CIV.P. 56(f).

DATED this 19th day of April, 2007.

SNELL & WILMER

By  /s/ ESP (#023402)
Donald L. Gaffney
Eric S. Pezold
Jasmin Yang
Andrew A. Harnisch
One Arizona Center
400 E. Van Buren
Phoenix, AZ  85004-2202
Attorneys for Covenant Christian
Center International, Inc.

Copy of the foregoing served
by U.S. Mail or electronic
notification this 19th day of
April, 2007, to:

John R. Clemency
Todd A. Burgess
Greenberg Traurig LLP
2375 East Camelback Road, Suite 700
Phoenix, Arizona 85016
E-Mail: clemencyj@gtlaw.com
            burgesst@gtlaw.com
Counsel for Mortgages Ltd.,
New Hope Partners, L.L.C.

Richard J. Cuellar
Office Of The U.S. Trustee
230 N. First Ave., #204
Phoenix, AZ 85003-1706
E-Mail: ric.j.cuellar@usdoj.gov


/s/ Janet Clarke