Donald L. Gaffney (#005717)
Eric S. Pezold (#023402)
Andrew A. Harnisch (#024957)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070
E-Mail: dgaffney@swlaw.com
       epezold@swlaw.com
       aharnisch@swlaw.com
Attorneys for Covenant Christian Center International, Inc.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re:<br><br>COVENANT CHRISTIAN CENTER INTERNATIONAL, INC.,<br><br>Debtor. | In Proceedings Under Chapter 11<br><br>Case No. 2:06-bk-02386-CGC |
| COVENANT CHRISTIAN CENTER INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MORTGAGES LTD., an Arizona mortgage broker; and NEW HOPE PARTNERS, L.L.C., an Arizona Limited liability corporation,<br><br>Defendants. | Adversary No. 2:07-ap-00055-CGC<br><br>**THIRD AMENDED COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

Covenant Christian Center International, Inc., by and for its Third Amended Complaint,

2036847

states as follows:

## I.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157 and 134 and 11 U.S.C. § 105.

2. Venue is appropriate before this Court pursuant to 28 U.S.C. § 1409.

3. This proceeding contains both core and non-core matters.

## II.

## PARTIES

4. Plaintiff Covenant Christian Center International, Inc. is the Debtor and Debtor-in-Possession in the above-captioned pending Chapter 11 proceedings ("Plaintiff" or "the Covenant Church").

5. Defendant Mortgages Ltd. is an Arizona corporation and is a licensed Arizona mortgage banker, license number BK 7577 ("Mortgages Ltd.").

6. Defendant New Hope Partners, L.L.C. is an Arizona limited liability corporation whose sole managers and interest holders are Malcolm Jozoff and Ellen J. Jozoff ("NHPLLC").

## III.

## ALLEGATIONS COMMON TO CLAIMS FOR RELIEF

**A. Acquisition of Church Property**

7. The Covenant Church is a community-based church located in metropolitan Phoenix, which consists of a primarily minority congregation.

8. Due to its then-expanding attendance at a related facility, in early-2005, the Covenant Church sought a larger and more permanent meeting place.

9. The Covenant Church received an opportunity to purchase a property and building located generally at one end of a commercial center at 83rd Avenue and Peoria Avenue, Peoria, Arizona (the "Church Property"), with the seller offering to sell below market to assist the

Covenant Church.

**B.     The Church Loan and Servicing Agreement**

10.     After referral from the Equitable Real Estate Company, the Covenant Church met with representatives of Mortgages Ltd. to obtain an acquisition loan (the "Covenant Church Loan").

11.     At the time of approving a loan transaction, Mortgages Ltd. requested no appraisal or formal valuation of the Church Property, and instead compiled its own comparable values and internally set the value of the Church Property at over $1,600,000.

12.     Based on a valuation of the Church Property and with no analysis of the borrower's cash flow, Mortgages Ltd. created a loan transaction for a promissory note (the "Note") in the face amount of $1,075,000 at a non-default interest rate of 11.5 %; after subtraction of the broker and mortgage banker fees, Mortgages Ltd. actually advanced $1,030,061, resulting in an effective rate of interest of 16.25% (APR) to the Covenant Church.

13.     The Note provided for monthly interest payments only for one year, with maturity on Saturday, March 4, 2006.

14.     Mortgages Ltd. used little or no money of its own in placing the Covenant Church Loan, instead using "table money" advanced out of investor pools controlled by Mortgages Ltd. and then participating the loan to third-party investors ("Initial Investors").

15.     Mortgages Ltd. cannot produce any private offering memorandum provided to these Initial Investors in 2005 in the Covenant Church Loan.

16.     All of the transfers and assignments of the Note and Deed of Trust to the Initial Investors were publicly recorded in the Maricopa County, Arizona, real property records.

17.     At the time of the Note, the Covenant Church entered into a "Servicing Agreement" as the Trustor of the property regarding the loan, with Mortgages Ltd. signing as both the Beneficiary and the Servicing Agent, which, among other items, stated that the Trustor

and Beneficiary must release the Servicing Agent for its "nonfeasance, misfeasance, or malfeasance."

18. Section 4 of the Servicing Agent Agreement required the Covenant Church to indemnify Mortgages Ltd. for "any liabilities incurred by Servicing Agent [Mortgages Ltd.] and to pay any such amount within 5 business days of Servicing Agent's request."

19. At the time of the initial loan transaction, the Covenant Church received a "Loan Disclosure," which stated that it would be charged a "late payment" of 3% of the loan balance, but which did not reveal that other loan documents instead stated that Mortgages Ltd. could assess a continuous 36% interest for missing a payment, even if monthly payments were no longer applicable due to the Note's maturity.

20. The Servicing Agent Agreement provided, in Section 5(a) that "Trustor [Covenant Church] shall pay to Servicing Agent [Mortgages Ltd.] its current fees and costs, including, but not limited to those items set forth in the Fee Schedule received by Trustor. The Fee Schedule is subject to change without notice as to the amounts and items included therein."

21. At the time of the initial loan transaction, the Covenant Church received an incomprehensible page of potential "fees," many of which had no set amount. The fee statement concluded with the statement that other types of fees could be assessed without notice to Covenant Church.

22. Under the Servicing Agent Agreement, Section 3(c), upon the assignment, termination, or resignation of the Servicing Agent, Mortgages Ltd., the Covenant Church was required to "immediately reimburse" the Servicing Agent for all fees and costs.

2036847

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

**C.  Maturity of the Covenant Church Loan and Sale of the Loan**

23. The Covenant Church paid all of the monthly payments until maturity of the Covenant Church Loan on Saturday, March 4, 2006; consequently, the Church's Note was current as of Friday, March 3, 2006.

24. Prior to maturity, the Covenant Church had been told that Mortgages Ltd. would agree to an extension of the Covenant Church Loan past the March 4, 2006 date if the Church would pay additional monthly payments of interest while take-out financing was located.

25. Instead of allowing an extension of the Covenant Church Loan, Mortgages Ltd. immediately became frantic to sell the matured loan through Mortgages Ltd.'s "Performance Plus" Program, a scheme that presented Mortgages Ltd. the ability to generate huge profits for itself without investment.

26. Mortgages Ltd. does not provide information to the public or its mortgage borrowers of the mechanics of its "Performance Plus" Program, which is maintained as a "confidential" program.

27. Immediately following the maturity date, Mortgages Ltd. convened an urgent meeting for a new underwriting of a loan to the Covenant Church.

28. Mortgages Ltd., on or before Tuesday, March 7, 2006, through its 100% owner Scott Coles, contacted Malcolm Jozoff offering to move Mr. Jozoff into an investment that would return him an 18% profit.

**D.  The Direction to Purchase, the Loan Sale Agreement, the Performance Plus Agency Agreement**

29. On Wednesday, March 8, 2006, Malcolm Jozoff and Ellen J. Jozoff executed a "Direction to Purchase" with Mortgages Ltd. Securities, L.L.C. ("Mortgages Securities") to buy the Covenant Church Loan through their entity New Hope Partners, L.L.C. ("NHPLLC").

30. Under the terms of the Direction to Purchase, NHPLLC agreed to buy the matured Covenant Church Loan, Loan No. 835406, for a premium above the face amount of the principal,

2036847

- 5 -

specifically agreeing to pay $1,075,000 and $69,994.06 "for accrued interest, fees, and costs associated with the loan" between March 4, 2006 and March 9, 2006.

31. The Direction to Purchase further states that the loan "pays a net rate to NHPLLC" pursuant to a separate document entitled the "Loan Sale Agreement."

32. The Direction to Purchase states that "payments are due on the 4th of each month," although the same document states the loan has matured.

33. The Direction to Purchase states that NHPLLC's purchase "is <u>conditioned upon</u> your execution of Mortgage Ltd.'s servicing documents including the Agency Agreement for the Loan . . ." (emphasis in original).

34. The Direction to Purchase further provides that Mortgages Ltd. would receive a kickback of the interest under the loan as a "fee":

> (b) Mortgages Ltd. will receive certain fees in connection with the sale and servicing of the Loan as set forth in the Agency Agreement and Loan Sale Agreement, including without limitation an interest rate spread equal to 9.000% of the monthly interest payments made by the Borrower.

35. A day later, on March 9, 2006, Mortgages Ltd. executed a "Loan Sale Agreement" with NHPLLC under which NHPLLC "agrees to buy the Itemized Interests in the Loan Documents under the terms and conditions set forth in this Agreement."

36. The Loan Sale Agreement states in Section 4.2:

> 4.2 As part of the Purchase Price set forth herein, Purchaser shall pay Mortgages Ltd. an "Agency Fee" in the amount of $ 16,125.00 in immediately available funds on or before the Closing Date. This Agency Fee is separate and apart from any other obligations set forth in the Agency Agreement.

37. The Loan Sale Agreement further states in Section 4.3:

> 4.3 In addition to the Agency Fee set forth in Section 4.2, Purchaser agrees to pay to Mortgages Ltd. an additional fee equal to the interest received by Purchaser on the Loan in excess of Eighteen percent (18%) per annum as a result of a reinstatement of the Loan or Payment of the balance of the Loan. Said additional fee shall be paid at the time of such reinstatement of the Loan or payment of the balance due on the Loan.

2036847

- 6 -

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

38. The Loan Sale Agreement required that Mortgages Ltd.'s attorneys would continue as "attorney and trustee for purchaser in the trustee sale proceedings and all other matters relating to the enforcement of the Loan," even though they did not represent NHPLLC in the Loan sale.

39. The Loan Sale Agreement further states in Section 7.1:

> 7.1 At Closing, Seller shall execute and deliver to Purchaser such indorsements and assignments which are reasonably necessary to effectuate Seller's transfer and assignment to Purchaser of the interest in the Loan Documents. Copies of transfer documents prior to execution are attached hereto as Exhibit I and a copy of the ALTA Lender's Title Insurance Policy prior to the endorsement is attached hereto as Exhibit J.

40. The Loan Sale Agreement includes a specific acknowledgment in Section 9.2:

> 9.2 Purchaser acknowledges that the Loan is presently in default, and that Seller is pursuing remedies under the Loan, including a trustee's sale proceeding against the Trust Property.

41. The Loan Sale Agreement included a Schedule of Exhibits which incorporated, among other items, assignment documents, a "Loan Property Information" document, a "Performance Plus Payoff Statement," and an "Agency Agreement."

42. As a part of the Loan Sale Agreement, NHPLLC was given an earlier "Loan Property Information" document which showed "Income: 0," "Mtg. Ltd. Value $0.00," and "Appraisal Value $0.00."

43. As a part of the Loan Sale Agreement, a document was included entitled "Performance Plus Agency Agreement," which recites at the beginning:

> Loan No. 835406 03/09/2006
>
> "Trustor" (individually and collectively):
>     Covenant Christian Center International, an Arizona corporation
>
> "Beneficiary": New Hope Partners, L.L.C., an Arizona limited liability company
>
> "Agent": Mortgages Ltd., an Arizona Corporation

2036847

- 7 -

44. Section 1(c) of the new Performance Plus Agency Agreement provided:

> c. Compensation. As compensation for the services provided by Agent, Agent may:
>
> (1) Retain any and all fees and charges assessed under the Loan Documents and collected by Agent, including, but not limited to, late charges, maturity late charges, administrative fees, prepayment penalties or premiums, notice fees and services;
>
> (2) Deduct from payments received by Beneficiary an interest participation equal to the amount received in excess of the Beneficiary's rate described in the Loan Sale Agreement and a minimum service charge equal to $0.00 per month to be paid from each monthly payment until paid in full;
>
> (3) Collect and retain any interest that accrues on any impound accounts;
>
> (4) Collect and retain any assumption fees and charges; and
>
> (5) Collect and retain any extension fees and forbearance fees.

45. Under Section 3(b) of the new Performance Plus Agency Agreement, NHPLLC agreed that if the trust property was foreclosed, Mortgages Ltd. could enter into a real estate broker's agreement to sell the property as Mortgages Ltd. "deems appropriate."

46. Under Section 3(c) of the new Performance Plus Agency Agreement, if Mortgages Ltd. was ever terminated as Agent, then NHPLLC would be required to pay Mortgages Ltd. "all compensation due," thereby ensuring Mortgages Ltd. payment of its effective 45% interest, plus other fees, even if terminated.

47. Under Section 6(c) of the new Performance Plus Agency Agreement, NHPLLC, but not Mortgages Ltd., was required to maintain as "Confidential Information" "any and all written and verbal information provided by Agent to Beneficiary in connection with the Loan . . ."; this requirement of secrecy extended so far as "(4) To return all Confidential Information to Agent upon request therefor and to <u>destroy any additional notes or records made from such Confidential Information</u>"; and "(5) Not to give testimony against Agent in any legal proceeding

to which Agent is a party, unless compelled to do so by competent legal authority." (emphasis supplied).

48. Under Section 7(e) of the new Performance Plus Agency Agreement, "As to this Loan, any and all Prior Agency Agreements are hereby null and void . . . ."

49. Despite references to the Trustor, the Covenant Church, in the new Performance Plus Agency Agreement, the document was neither executed nor disclosed to the Covenant Church.

50. The Loan Sale Agreement included a "Final Performance Plus Payoff Statement" that provided that NHPLLC pay a variety of charges to Mortgages Ltd.

51. While the original Servicing Agent Agreement on the Covenant Church Loan showed that a Late Fee or Default Interest would be paid "for the Beneficiary," such fees and additional interest were not calculated as part of the payment to the Initial Investors but instead pocketed by Mortgages Ltd.

52. None of the documents that would reveal the secret beneficial interest of Mortgages Ltd. in the Covenant Church Loan were publicly recorded.

53. None of the documents that would reveal the secret beneficial interest of Mortgages Ltd. were provided when executed to the borrower.

54. On March 9, 2006, Mortgages Ltd. executed and issued as agent for "The Beneficiary" NHPLLC a "Statement of Breach or Non-Performance and Election to Sell Under Deed of Trust," even though on March 9, 2006, the third-party beneficiaries under the Deed of Trust had not executed any assignment of their interests to NHPLLC.

55. On March 23, 2006, a Notice of Trustee's Sale was recorded to foreclose the Church Property on Tuesday, June 27, 2006.

2036847

### E. The Trustee's Sale and Accelerating Maturity Charges

56. Mortgages Ltd. assessed "charges" to the Covenant Church Loan, not when Mortgages Ltd. advanced payments to third parties, but when NHPLLC prepaid funds to Mortgages Ltd.

57. Mortgages Ltd. assessed interest "charges" as part of the Covenant Church Loan balance before monies were even paid.

58. Mortgages Ltd. documents show that while Mortgages Ltd. has asserted a default interest against the Covenant Church since March 4, 2006, Mortgages Ltd. paid its Initial Investors in the Covenant Church Loan only non-default interest for the period after March 4, 2006, rather than non-default interest.

59. Assignments by the Beneficiaries of their interests to NHPLLC were not executed until after Mortgages Ltd. directed a foreclosure as the "agent" of NHPLLC.

60. Mortgages Ltd. charged to the Covenant Church Loan a trustee sale guarantee, which Mortgages Ltd. apparently paid into a Mortgages Ltd. fund with no apparent connection to the Covenant Church Loan.

61. On March 24, 2006, the Covenant Church presented a certified check in the amount of $10,402.66 to Mortgages Ltd., which was refused by Mortgages Ltd.

62. On March 30, 2006, Mortgages Ltd. offered to allow the Covenant Church to "bring current" the matured loan, but demanded $128,010.09, of which a significant portion would be paid as a concealed kickback of fees and interest to Mortgages Ltd.

63. On March 30, 2006, Mortgages Ltd. assessed "unpaid charges" for items that had not been paid to the third party.

64. In statements of amounts claimed to be owed under the Covenant Church Loan, Mortgages Ltd., on behalf of itself and NHPLLC, included "charges" that had not occurred and then accrued interest on the false charge amounts.

2036847

- 10 -

65. In statements of amounts claimed to be owed under the Covenant Church Loan, Mortgages Ltd., on behalf of itself and NHPLLC, included interest on "late charge" interest.

66. The effective rate of interest being asserted under the Covenant Church Loan on and after March 30, 2006, <u>was over 67.75% interest</u>, even without including interest being assessed on charges or compounded on late charge interest.

67. Mortgages Ltd. and NHPLLC arranged that the Trustee's sale on the Church Property be set for the earliest possible date, so that the foreclosure was set for June 27, 2006.

68. Because of Mortgages Ltd. and NHPLLC's scheme, the Covenant Church Loan continued to expand at an arithmetic rate that made a refinancing impossible on a loan to value ratio.

**F.** **<u>Mortgages Ltd. Demands $32,000 Fee for 34-Day Trustee Sale Extension</u>**

69. Mortgages Ltd. refused to grant any extension of the June 27, 2006 Deed of Trust sale unless the Covenant Church conceded to all claims by Mortgages Ltd. of the asserted loan calculations.

70. In order to avoid the June 27 Deed of Trust sale and obtain extensions amounting to only thirty-four (34) days, the Covenant Church delivered certified funds of over $32,000 as "extension fees"; these fees were pocketed by Mortgages Ltd., not paid over to NHPLLC or applied to any of the outstanding principal or accruing interest under the original Note; the July extension fees were in an amount sufficient to have paid nearly three months of the original non-default interest under the Covenant Church Loan.

71. On August 3, 2006, the Covenant Church filed its Chapter 11 petition in order to prevent a foreclosure by Deed of Trust sale reset for that date.

72. Immediately following the Chapter 11 filing, Mortgages Ltd. intended to try to collect another large "extension" fee for its own account as part of a Court stipulation it intended to propose to the Covenant Church.

### G. Mortgages Ltd. and NHPLLC Conceal the Loan Sale Transaction

73. The Covenant Church, through counsel, repeatedly requested that the necessary Bankruptcy Rule 2019 Statement be filed due to the agent relationship claimed by Mortgages Ltd. and NHPLLC.

74. On September 5, 2006, counsel for Mortgages Ltd. and NHPLLC filed a Rule 2019 Statement, which stated in pertinent part:

> The claim of New Hope Partners, L.L.C. is set forth more fully in Exhibit "A" attached hereto. Mortgages Ltd. is the servicing agent for New Hope Partners, L.L.C. pursuant to a Master Agency Agreement is attached hereto as Exhibit. (*sic*)

75. The September 5, 2006 Verified Statement, however, attached neither the March 2005 Servicing Agreement nor the secret March 2006 Performance Plus Servicing Agreement, and instead attached a third January 24, 2005 "Master Agency Agreement" between NHPLLC and Mortgages Ltd., which appeared to have no connection with the Covenant Church Loan.

76. Upon review of the Rule 2019 Statement, the Covenant Church explained, through its counsel, that the Statement was plainly incorrect and deficient and that if not corrected would be the subject of a formal objection before the Bankruptcy Court.

77. After not receiving corrections or additions, the Covenant Church filed its objection to the Rule 2019 Statement on October 4, 2006; later on that same day counsel for Mortgages Ltd. and NHPLLC revealed the previously secret "Loan Sale Agreement" and some of its attached documents.

78. After further demand, the rest of the Loan Sale listed exhibits were disclosed; within two weeks after the disclosures, said counsel was fired from representation of both Mortgages Ltd. and NHPLLC in the bankruptcy proceedings.

79. On information and belief, Mortgages Ltd. and its Performance Plus investors have concealed and not disclosed their Loan Sale/kickback transactions to their borrowers, the federal courts, and other creditors and parties in interest.

2036847

- 12 -

**H.  Mortgages Ltd. Undertook a Fiduciary Role and Breached That Role**

80. As a mortgage banker, Mortgages Ltd. acted in a fiduciary duty with respect to its relations which the Covenant Church.

81. Covenant Church paid a commission for the services of Mortgages Ltd. to act as its mortgage banker in arranging financing in connection with the Church Property.

82. A mortgage banker licensed by the State of Arizona is a fiduciary to parties seeking its services.

83. Mortgages Ltd. has acted for years to conceal the operation of its Performance Plus Program from the courts and from the Arizona Department of Financial Institutions.

84. In litigation before the courts, Mortgages Ltd. has concealed the terms and operation of its Performance Plus Program.

85. In turn, Mortgages Ltd. has concealed its history of litigation with its borrowers, which has further helped conceal its operations.

**I.**

**FIRST CLAIM FOR RELIEF -- DEFENDANT MORTGAGES LTD. – BREACH OF FIDUCIARY DUTY**

86. Plaintiff hereby realleges and incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

87. Mortgages Ltd. has been a mortgage banker licensed by the State of Arizona.

88. Mortgages Ltd., as a mortgage banker, has acted as a fiduciary to the Covenant Church after Mortgages Ltd. paid a fee to a third party broker for the referral of the Covenant Church to Mortgages Ltd.

89. Mortgages Ltd.'s conduct, including its entering into the concealed Performance Plus process, violated its fiduciary duty to the Covenant Church and to the public.

90. The conduct by Mortgages Ltd. has violated Mortgages Ltd.'s statutory duties as a

mortgage banker.

WHEREFORE, Plaintiff respectfully requests relief, as follows:

  A. that Mortgages Ltd. and its affiliate Mortgages Ltd. Securities, L.L.C. be required to forfeit any and all fees, income, reimbursements, and interest and profits thereon, received directly or indirectly in the conduct of their Performance Plus Program;

  B. that Mortgages Ltd. and Mortgages Ltd. Securities, L.L.C. be enjoined from further conduct related to the Performance Plus Program or similar activities;

  C. that Mortgages Ltd. and Mortgages Ltd. Securities, L.L.C. be directed to divulge and account for any and all business activities relating to the Performance Plus Program;

  D. that Mortgages Ltd. be enjoined from undertaking further actions or activities as a mortgage banker due to its false sworn statements;

  E. for attorneys' fees and costs incurred herein; and/or

  F. for such other and further relief as this Court deems appropriate.

## II.

### SECOND CLAIM FOR RELIEF -– DEFENDANT MORTGAGES LTD. – BREACH OF DUTY OF GOOD FAITH

91. Plaintiff hereby realleges and incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

92. The Covenant Church entered into a servicing contract agreement with Mortgages Ltd. under which the Covenant Church paid Mortgages Ltd. a regular monthly servicing fee.

93. Mortgages Ltd. owed an implied duty of good faith and fair dealing to the Covenant Church. *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust,* 38 P.3d 12, 29 (Ariz. 2002).

94. The acts, including misrepresentations and concealment of Mortgages Ltd.'s true role and in the Covenant Loan relationship, constitute breaches and violations of Mortgages Ltd.'s duties.

95. WHEREFORE, Plaintiff requests that Defendant Mortgages Ltd. be held liable to Plaintiff as follows:

    A.     for any and all actual damages suffered by Plaintiff from Defendant Mortgages Ltd.'s breach, including any and all sums paid to Mortgages Ltd.;

    B.     for equitable relief for the concealed assignment of interests under the Covenant Church Loan;

    C.     awarding the Covenant Church its reasonable attorneys' fees and costs; and/or

    D.     for such other and further relief as this Court may deem appropriate.

## III.

## THIRD CLAIM FOR RELIEF -- DEFENDANT MORTGAGES LTD. - VIOLATIONS OF A.R.S. § 6-947(D)

96. Plaintiff hereby realleges and incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

97. Mortgages Ltd. is subject to statutes and regulations relating to a licensed Arizona mortgage banker.

98. The charges or rates of charge, if stated, shall be set forth in a clear and concise manner under A.R.S. § 6-947.

99. The charges and fees asserted by Mortgages Ltd. are opaque, misleading, and deceptive, including a deceptive 36% continuing late charge on the balance.

100. The charges and fees of Mortgages Ltd. may be, and were, altered and announced in a misleading fashion for the control and/or profit of Mortgages Ltd.

2036847

- 15 -

101. Mortgages Ltd. has engaged in prohibited acts under A.R.S. § 6-947 to the detriment of the borrower and the profit of Mortgages Ltd.

102. The Covenant Church has been damaged by the acts prohibited of the mortgage banker, Mortgages Ltd.

103. The damages constitute a claim against Mortgages Ltd. and under and against its bond under A.R.S. § 6-975 for the wrongful acts and misrepresentations of the mortgage brokerage licensee Mortgages Ltd.

WHEREFORE, Plaintiff Covenant Church respectfully requests entry for judgment against Defendant Mortgages Ltd., as follows:

    A.    for any and all damages incurred as a result of the wrongful acts of Defendant Mortgages Ltd.;

    B.    for an order denying payment of any funds or other value to Mortgages Ltd. in connection with the Covenant Church Loan;

    C.    for an order directing payment and turnover to the Bankruptcy Estate of any and all funds or other value under the Covenant Church Loan, including interest thereon.

    D.    reasonable attorneys' fees and costs; and/or

    E.    for such other and further relief as this Court may deem appropriate.

## IV.

## FOURTH CLAIM FOR RELIEF -- NEW HOPE PARTNERS, L.L.C. – 11 U.S.C. §§ 502(a), 506(d) and 551

104. Plaintiff hereby realleges and incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

105. The claim of Defendant NHPLLC includes unenforceable loan charges, fees, expenses, and/or interest, which charges, fees, expenses, and/or interest should be disallowed pursuant to 11 U.S.C. § 502(a).

2036847

106. To the extent that the Defendant NHPLLC alleges that those unenforceable loan charges, fees, expenses, and/or interest are secured by property of the Plaintiff, the Plaintiff alleges that such lien is unenforceable and void pursuant to 11 U.S.C. § 506(d).

107. Pursuant to 11 U.S.C. § 551, the avoided lien is preserved for the benefit of the Plaintiff's Bankruptcy Estate.

WHEREFORE, Plaintiff respectfully requests entry for judgment against Defendant NHPLLC, as follows:

    A.    for an order finding that any fees, costs, expenses, and/or interest charged by NHPLLC against the Plaintiff beyond the principal balance of the Covenant Christian Loan are unenforceable and thus disallowed in their entirety pursuant to 11 U.S.C. § 502(a);

    B.    for an order finding any lien of NHPLLC against property of the Plaintiff is unenforceable and void pursuant to 11 U.S.C. § 506(d).

    C.    for an order preserving and transferring the lien to the Plaintiff's Bankruptcy Estate pursuant to 11 U.S.C. § 551;

    D.    for an order awarding the Plaintiff its reasonable attorneys' fees and costs; and/or

    E.    for such other and further relief as this Court may deem appropriate.

**V.**

**FIFTH CLAIM FOR RELIEF -- NEW HOPE PARTNERS, L.L.C. - 11 U.S.C. §§ 547(b) and 550, 551**

108. Plaintiff hereby realleges and incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

109. Within ninety days of the Bankruptcy filing, on or about June 27, 2006, Plaintiff transferred approximately $32,000 to Mortgages, Ltd., as servicing agent for NHPLLC, and executed related documents (collectively, the "Transfer").

110. The Transfer was made to or for the benefit of NHPLLC.

111. The Transfer was made for or on account of an antecedent debt owed by the Plaintiff to NHPLLC before the transfer was made.

112. The Transfer was made while the Plaintiff was actually insolvent.

113. Pursuant to § 547(f) of the Bankruptcy Code, the Transfer was made while Plaintiff was presumptively insolvent.

114. The Transfer enabled NHPLLC to receive more than it would have received as a creditor if: (a) the case were a case under Chapter 7 of this title; (b) the Transfer had not been made; and (c) NHPLLC received payment on the debt it was owed to the extent provided in a case by virtue of its unsecured status as a result of its unrecorded and undisclosed interest in the Covenant Christian Loan.

115. Plaintiff is entitled to avoid and recover, for the benefit of the Estate, the Transfer, or the value thereof, pursuant to § 547 of the Bankruptcy Code.

116. The Transfer is recoverable from NHPLLC as an avoidable preference pursuant to §§ 547 and 550 of the Bankruptcy Code.

117. Any lien of NHPLLC against property of the Plaintiff that purportedly secures the Transfer is transferred to the Plaintiff's Bankruptcy Estate pursuant to § 551 of the Bankruptcy Code.

WHEREFORE, Plaintiff requests a judgment be entered against NHPLLC as follows:

  A.   for avoidance of the Transfer pursuant to §§ 547 and 550 of the Bankruptcy Code;

  B.   for pre-judgment interest at the maximum legal rate pursuant to 28 U.S.C. § 1961 on the Transfer from the earliest date allowed by law until date of judgment;

  C.   for post-judgment interest at the maximum legal rate pursuant to 28 U.S.C. § 1961 on the Transfer from the date of judgment until paid in full;

2036847

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

D. for an award of Plaintiff's attorneys' fees and costs;

E. for an order transferring any lien held by NHPLLC against property of the Plaintiff that purportedly secures the Transfer to the Plaintiff's Bankruptcy Estate under 11 U.S.C. § 551; and/or

F. for such other and further relief as the Court may deem just and appropriate.

**JURY TRIAL**

Plaintiff requests a trial by jury in this proceeding.

DATED this 21st day of August 2007.

        SNELL & WILMER

        By  /s/ ESP (#023402)
           Donald L. Gaffney
           Eric S. Pezold
           Andrew A. Harnisch
           One Arizona Center
           400 E. Van Buren
           Phoenix, AZ 85004-2202
           Attorneys for Covenant Christian
           Center International, Inc.

COPY of the foregoing
served by U.S. Mail or
electronic notification this
21st day of August 2007, to:

John R. Clemency
Todd Burgess.
Greenberg Traurig LLP
2375 East Camelback Road, Suite 700
Phoenix, Arizona 85016
E-Mail: clemencyj@gtlaw.com
       burgess6@gtlaw.com

/s/

2036847

- 19 -